681 A.2d 201

**Sharon V. CHILDERS, Administratrix of the Estate of Willard E. Childers, Deceased**

**v.**

**POWER LINE EQUIPMENT RENTALS, INC., a Corporation; Kenneth W. Joseph, T/D/B/A Sunrise Equipment and Supply Company and Sunrise Equipment and Supply Company; Ohio Edison, a Corporation; General Motors Corporation; Pitman Manufacturing Company; A.B. Chance Company, a Corporation; and Emerson Electric Company, a Corporation; Dana Corporation; Sandra L. Simpson T/D/B/A E & S Service & Repair and E & S Service and Repair**

**v.**

**The HOWARD P. FOLEY COMPANY, INC.**

**Appeal of PITMAN MANUFACTURING COMPANY; A.B. Chance Company, a Corporation; and Emerson Electric Company, a Corporation.**

Superior Court of Pennsylvania.

Argued May 1, 1996.

Filed July 24, 1996.

98

Robert S. Grigsby, Pittsburgh, for appellants.

Francis J. Carey, Pittsburgh, for Sharon V. Childers, appellee.

Paul J. Malak, Pittsburgh, for Power Line Equipment, appellee.

Kenneth S. Robb, McKeesport, for Kenneth W. Joseph, appellee.

Joseph M. Ramirez, Pittsburgh, for General Motors, etc., appellees.

Before POPOVICH, EAKIN and HESTER, JJ.

POPOVICH, Judge:

Willard E. Childers was crushed to death while standing at the operator's station of a Pitman Polecat digger-derrick truck. While Mr. Childers was operating the truck from behind, the truck jerked forward, then rolled back crushing him between the truck and a flatbed trailer. In subsequent

death actions, the administratrix of his estate proceeded upon a theory of strict products liability contending that the digger-derrick truck had been defectively designed, manufactured, assembled and sold by the defendants. Defendants denied these allegations. The case was submitted to a jury which returned a verdict of $1.1 million in favor of Mr. Childers' estate. Subsequent to the jury's verdict, the trial court molded the verdict in favor of Mr. Childers' estate and all other defendants,[1] and against Pitman Manufacturing Company, A.B. Chance Company and Emerson Electric Company (appellants). Appellants' timely filed post-trial motions were denied by the trial court and this appeal followed.[2]

On appeal, appellants contend that a new trial is warranted for the following reasons: 1) The trial court improperly refused to admit evidence on the issue of causation as it related to decedent's conduct; 2) The trial court improperly limited the testimony of John Frank, appellants' expert witness; 3) The trial court improperly limited appellants' cross-examination of Jo Ellis Davidson and Professor John W. Wiss,

**1.** Defendants for whom the verdict was molded in their favor included Power Line Equipment, Inc., Kenneth W. Joseph, t/d/b/a Sunrise Equipment and Supply Company, General Motors Corporation, Dana Corporation, Sandra L. Simpson, t/d/b/a E & S Service & Repair, and The Howard P. Foley Company, Inc.

**2.** We note that the procedural history of this case is rather lengthy and complicated. Mr. Childers' estate (plaintiff) instituted this action by Praecipe of Writ of Summons in the Court of Common Pleas of Allegheny County in May of 1984. At approximately the same time, plaintiff also brought an action in the United States District Court for the Western District of Pennsylvania which included all of the parties to the state court action. Subsequently, plaintiff elected to proceed in federal court, and trial by jury commenced in May of 1987. The jury returned a verdict in favor of all defendants and against plaintiff. Plaintiff appealed to the United States Court of Appeals for the Third Circuit. The Third Circuit affirmed the lower court in part, reversed the lower court in part and remanded for a new trial. *See Childers v. Power Line Equipment Rentals*, 842 F.2d 689 (3d Cir.1988). Thereafter, plaintiff elected to proceed in the state court action pending in the Court of Common Pleas of Allegheny County. Trial by jury commenced in the lower court on March 4, 1991, and concluded on May 31, 1991. Timely post-trial motions were filed on June 10, 1991. These motions were denied by the lower court on March 20, 1995. In lieu of an opinion, the lower court filed a statement on November 8, 1995. Appellants filed a timely appeal to this Court on April 11, 1995.

plaintiff's expert witnesses; 4) The trial court improperly granted General Motor Corporation's (General Motors) motion for a directed verdict; 5) The trial court improperly denied Emerson Electric Company's motion for a directed verdict. In the alternative, appellants argue that if a new trial is not warranted, this Court must determine that the trial court erred in refusing to submit to the jury the issue of contribution as it related to appellees Sunrise Equipment and Supply Company and Power Line Equipment Rentals, Inc. We affirm.

> [At the outset of our analysis, we note that] [o]ur standard of review of the trial court's denial of a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or constituted an abuse of discretion. The appellant[s] bear a heavy burden in persuading this Court that such an error occurred. In considering all of the evidence in the light most favorable to appellee[s] we must, to reverse the trial court, conclude that the verdict would be changed if another trial were granted. [Moreover], when the basis of the request for a new trial is the lower court's ruling[s] on evidence, to constitute reversible error, such ruling[s] must be shown not only to have been erroneous but harmful to the part[ies] complaining. Evidentiary ruling[s] which did not affect the verdict will not provide a basis for disturbing the jury's judgment.

*Dougherty v. Edward J. Meloney, Inc.*, 443 Pa.Super. 201, 661 A.2d 375, 387 (1995) (citations omitted).

Appellants' first contention is that the trial court erred in refusing to admit evidence on the issue of causation as it related to decedent's conduct. The law is clear that in order to recover in a strict products liability action decedent's estate had to demonstrate that there was a defect in the truck and that the defect caused the accident. *Dietrich v. J.I. Case Company*, 390 Pa.Super. 475, 568 A.2d 1272 (1990). During trial, appellants repeatedly attempted to introduce evidence that Mr. Childers' method of operating the truck, and not the design or manufacture of the truck, was the proximate cause of the accident. Appellants argued that the decedent's failure

to take the truck out of reverse, his failure to apply the parking brakes, his failure to chock the wheels and his act of parking the truck perpendicular to the flatbed trailer were relevant to show misuse or that his conduct was the cause of the accident. Because the administratrix was proceeding solely on the theory of strict products liability, the trial court concluded that such evidence was only relevant in showing contributory negligence, and, therefore, excluded it. Appellants contend that this was error. We disagree.

■ Throughout the development of strict products liability, our supreme court has been adamant that negligence concepts have no place in a strict liability action. *Kimco Development v. Michael D's Carpet*, 536 Pa. 1, 637 A.2d 603 (1993); *McCown v. International Harvester Company*, 463 Pa. 13, 342 A.2d 381 (1975). In *Kimco*, our supreme court specifically addressed the issue of whether comparative negligence should constitute a defense to a strict products liability action. The court unequivocally held that it would not extend negligence concepts, and particularly the defense of comparative negligence, into the area of strict products liability. *Kimco, supra.* The supreme court stated the following reasons for declining to extend negligence concepts to the area of strict products liability:

> Our position is not based solely on the problem of the conceptual confusion that would ensue should negligence and strict liability concepts be commingled, although that concern is not negligible. Rather, we think that the underlying purpose of strict product liability is undermined by introducing negligence concepts into it. Strict product liability is premised on the concept of enterprise liability for casting a defective product into the stream of commerce.
>
> The deterrent effect of imposing strict product liability standards would be weakened were we to allow actions based upon it to be defeated, or recoveries reduced by negligence concepts.

*Kimco*, 637 A.2d at 606–607.

In *Smith v. Weissenfels, Inc.*, 441 Pa.Super. 328, 657 A.2d 949 (1995), this Court applied the rules enunciated in *Kimco* to

a strict products liability claim. There, we specifically held that "[w]here a defendant is found liable to a plaintiff under principles of strict liability, the comparative negligence of the plaintiff is irrelevant and may not be used to reduce the responsibility of a strictly liable defendant for the entire damage award." *Smith*, 657 A.2d at 953 (citations omitted).

While appellants acknowledge that evidence of a plaintiff's contributory negligence is ordinarily inadmissible in a strict products liability proceeding, they argue that it is admissible when, as is alleged here, the evidence is used to rebut the "causation prong" of a products liability claim. As appellants correctly argue, our supreme court has never held that evidence of a plaintiff's conduct is irrelevant or inadmissible in a strict products liability action for every purpose. Rather, our supreme court has permitted defendants to introduce evidence that a plaintiff voluntarily assumed the risk or misused a product in a strict products liability action. Moreover, this Court has held that defendants may introduce evidence that a plaintiff engaged in highly reckless conduct to defeat a strict products liability claim. Under these limited theories, the appellate courts of this Commonwealth have held that an inquiry as to a plaintiff's use of a product is relevant as it relates to causation. However, after a careful review of the record, we find that in this case there is insufficient evidence to show that decedent voluntarily assumed the risk of the truck's defects, that he misused the truck, or that he engaged in highly reckless conduct. Rather, we find that the evidence which appellants wished to introduce tended to show that decedent was careless in his use of the truck, and, therefore, the evidence was properly excluded.

In *Robinson v. B.F. Goodrich Tire Company*, 444 Pa.Super. 640, 664 A.2d 616 (1995), we acknowledged the supreme court's holding in *Kimco* and held that a plaintiff cannot be precluded from recovery in a strict products liability case because of his own negligence. However, we further held the following:

Voluntary assumption of the risk ... is an affirmative defense in a [strict] products liability case. Before the theory may be submitted to a jury, the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it. Voluntary assumption of the risk involves a subjective awareness of the risk inherent in an activity and a willingness to accept it. A plaintiff has voluntarily assumed the risk where he fully understands it and voluntarily chooses to encounter it. A plaintiff's knowledge and understanding of the risk may be shown by circumstantial evidence.

It has been said that assumption of the risk and contributory negligence may sometimes overlap because certain conduct may exhibit the elements of both. In general, however, the concepts are distinguishable. Contributory negligence connotes carelessness; assumption of the risk connotes venturousness in voluntarily incurring a risk the nature and extent of which are fully appreciated. Assumption of risk involves the meeting of a subjectively known risk; whereas, contributory negligence may involve a plaintiff exposing himself to a danger of which he was subjectively unaware but which would have been apparent had he used due care.

*Robinson,* 664 A.2d at 618 (citations omitted).

██ In this case, the evidence proffered by appellants does not show that the decedent was subjectively aware of a specific defect in the truck. Appellants contend that decedent should have been aware of the danger at issue because he failed to apply the parking brakes, failed to chock the wheels, failed to take the truck out of reverse and parked the truck perpendicular to the flatbed trailer. Even if appellants are correct in these assertions, however, they have alleged only that decedent was guilty of contributory negligence. *These allegations do not demonstrate that decedent knowingly and voluntarily assumed the risk of a specific defect in the truck. See Robinson, supra* (holding that plaintiff's failure to utilize available safety measures, without more, was insufficient to

demonstrate a voluntary assumption of a known risk). Accordingly, appellants' contention must fail on this basis.

Next, we must address whether decedent's alleged conduct constituted misuse of the truck. In order to demonstrate that decedent misused the truck, it was necessary for appellants to show that the use employed by decedent was either unforeseeable or outrageous. *Brandimarti v. Caterpillar Tractor Company*, 364 Pa.Super. 26, 527 A.2d 134 (1987). Based on the evidence proffered by appellants, we cannot conclude that decedent's alleged conduct and use of the truck were either unforeseeable or outrageous.

Finally, we must address whether decedent's alleged conduct was highly reckless. In order to demonstrate that decedent's actions were highly reckless, it was necessary for appellants to show that decedent knew or had reason to know of facts which created a high degree of risk of physical harm to himself or that he deliberately proceeded to act, or failed to act, in conscious disregard of that risk. *Brandimarti, supra.* "[E]vidence that a plaintiff acted in a highly reckless fashion is akin to evidence that plaintiff misused a product.... The issue of causation is raised when the plaintiff's action is so reckless that the plaintiff would have been injured despite the curing of any alleged defect, or is so extraordinary and unforeseeable as to constitute a superseding cause." *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 441 (3rd Cir.1992). *See Burch v. Sears, Roebuck and Company*, 320 Pa.Super. 444, 467 A.2d 615 (1983).

Here, there was no evidence that decedent knew or had reason to know of facts which created a high degree of risk of physical harm to himself or another, nor can it reasonably be maintained that decedent's alleged conduct was "extraordinary and unforeseeable." Rather, the evidence tended to show that decedent was careless in his use of the truck, and, therefore, contributorily negligent. Our conclusion in this regard is supported by the manner in which appellants have framed this issue on appeal. As discussed previously, appellants argue that decedent failed to apply the parking

brakes, failed to chock the wheels, failed to take the truck out of reverse and parked the truck perpendicular to the flatbed trailer. The evidence demonstrates that decedent exposed himself to a danger of which he was subjectively unaware but which would have been apparent had he used due care. The evidence does not demonstrate that decedent's actions were so reckless that he would have been killed even if the truck's defects were cured. Accordingly, the trial court did not err in refusing to permit appellants to introduce evidence of decedent's alleged negligence to rebut causation.

Appellants' next contention is that the trial court improperly limited the testimony of appellants' expert witness, John Frank. Specifically, appellants contend that the trial court should have permitted Mr. Frank to testify that in his opinion at the time of Mr. Childers' death (1) there was a malfunction in the truck's transmission, (2) that the rear operator's station was "safe" and (3) there was a risk presented by the inadequate parking brake prior to the installation of the utility body.

At the outset, we note that "the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion [or an error of law]." *Commonwealth v. Brown*, 408 Pa.Super. 246, 596 A.2d 840, 842 (1991) (citation omitted). Moreover, expert testimony should be admitted when it can assist and enlighten the jury in understanding areas requiring special expertise. *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981).

In regard to appellants' first contention, at trial, one of the appellants' theories of causation was that the truck's transmission malfunctioned resulting in the truck "jumping into" decedent. To prove this theory, appellants proffered the expert testimony of John Frank who was willing to testify that in his opinion the truck's transmission malfunctioned, that the malfunction of the transmission was evidence of a defect and that this malfunction/defect caused the accident. The trial court refused to allow this testimony because it concluded that

the expert's testimony would be speculative, and, therefore, his opinion as to whether the transmission malfunctioned could not be rendered with the requisite degree of professional certainty. The court's decision was based on the fact that the expert had failed to disassemble or examine the transmission at issue, and that the expert was unable to do more than describe the possibility of numerous causes for the alleged malfunction.

■ ▓▓▓▓ Our supreme court has held that "[n]o matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture." *Collins v. Hand,* 431 Pa. 378, 246 A.2d 398, 404 (1968). "When a party must prove causation through expert testimony, the expert must testify with 'reasonable certainty' that 'in his professional opinion,' the result in question did come from the cause alleged." *Cohen v. Albert Einstein Medical Center,* 405 Pa.Super. 392, 592 A.2d 720, 723 (1991) (citations omitted). "An expert fails this standard of certainty if he testifies that the alleged cause 'possibly,' or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was 'very highly probable' that it caused the result." *Kravinsky v. Glover,* 263 Pa.Super. 8, 396 A.2d 1349, 1356 (1979) (citations omitted). "This issue is not merely one of semantics. There is a logical reason for the rule. The opinion of an expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion." *Cohen,* 592 A.2d at 723 (citation omitted). "[I]t is the intent of our law that if . . . the expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment." *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534, 535 (1971).

▓▓▓▓ As discussed previously, the trial court would not permit the expert to opine as to whether the transmission malfunctioned in this case. Counsel proffered that there were seven or eight possible explanations for the alleged malfunc-

tion of the transmission. The court reasoned that if it permitted the expert to opine that the transmission malfunctioned, based on the *possibility* that one of eight explanations *may* have accounted for the alleged malfunction, the expert's opinion would not have been given with a reasonable degree of professional certainty. We agree. While it is clear that an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence. *Niggel v. Sears, Roebuck and Co.*, 219 Pa.Super. 353, 281 A.2d 718 (1971). Accordingly, the trial court did not err in excluding Mr. Frank's opinion that the transmission malfunctioned at the time of the accident.[3]

Appellants next argue that Mr. Frank should have been permitted to testify that in his opinion the rear operator's station was "safe," and, therefore, not the cause of Mr. Childers' death. The trial court indicated that it would not allow Mr. Frank to testify that the operator's station was "safe" because this was an ultimate issue for the jury to decide. We find no abuse of discretion in the trial court's ruling.

An expert's opinion as it relates to the cause of an injury comes dangerously close to improper testimonial opinion on the ultimate facts of causation. *Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420 (1987).

> Such expert testimony must be carefully scrutinized because issues of ultimate fact, ... are for the jury, not the expert.

---

3. We note that the trial court indicated that another reason it excluded Mr. Frank's opinion was the fact that he never disassembled or examined the transmission at issue. We find that this failure alone would not necessarily mandate the exclusion of the expert's opinion. If the opinion of an expert is based upon an adequate factual foundation, it is neither speculative nor conjecture, but a legitimate inference. *Albig v. Municipal Authority of Westmoreland County*, 348 Pa.Super. 505, 502 A.2d 658 (1985). Accordingly, if the expert was able to opine with a reasonable degree of professional certainty that the transmission malfunctioned, and that this malfunction was caused by established facts and circumstances known or observed by him from which he could reasonably infer that the transmission malfunctioned, then his opinion would not be excluded merely because he failed to disassemble the transmission. *See Albig, supra* (holding that mere fact expert did not examine the subsurface earth under plaintiff's home was not sufficient for excluding expert's testimony where his conclusion was drawn from established facts and circumstances).

In *Lewis v. Mellor,* 259 Pa.Super. 509, 393 A.2d 941 (1978) (*en banc*), [this Court] approved the principles set out in Fed.R.Evid. 704, which allows a witness to testify to the ultimate issue to be decided by the trier of fact. The *Lewis* opinion involved a lay witness. Subsequent Superior Court panels have extended the holding to expert testimony. *See e.g., Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa.Super. 218, 496 A.2d 762 (1985). [This Court's] rule, allowing a witness to testify to the ultimate issue, is limited to those instances where the admission will not confuse, mislead, or prejudice the jury.

*Kozak,* 531 A.2d at 424 (citations omitted). In establishing the aforementioned rules, we have also determined that "the trial court [will] not be reversed in ruling upon the admissibility of testimony to the ultimate issue in the case unless the trial court clearly abused its discretion and actual prejudice occurred." *Swartz v. General Electric Company,* 327 Pa.Super. 58, 474 A.2d 1172, 1178 (1984) (citation omitted).

██ Here, appellants contend that they were prejudiced by the trial court's ruling preventing their expert from testifying that the operator's station was "safe." Specifically, they contend that without the expert's opinion that the operator's station was "safe" they were unable to rebut appellee's claim that the rear operator's station was defective. We disagree. The record clearly reflects that during direct examination, Mr. Frank expressly testified, without objection, that in his opinion the operator's station was not defective. He further testified that the operator's station was in a good, efficient location. Therefore, appellants were not prevented from rebutting appellee's claim that the rear operator's station was defective. As appellants have alleged no other prejudice, we find that the trial court did not abuse its discretion.

Appellants next argue that Mr. Frank should have been permitted to rebut appellee's expert's testimony regarding the risk presented by the truck's parking brake. The trial court precluded Mr. Frank's testimony on this particular subject because his opinion would have been outside his pretrial report and would have been based on speculation and conjec-

ture. We find that the trial court did not abuse its discretion. Moreover, we note that appellants have failed to allege that they were prejudiced by the trial court's ruling. *See Dougherty, supra* (appellants have the burden of showing that an evidentiary ruling was in error and prejudicial).

Appellants' next contention is that the trial court improperly limited their cross-examination of Jo Ellis Davidson and Professor John W. Wiss, appellee's expert witnesses. We find that appellants have waived this issue on appeal.

 Appellants have failed to cite any authority in either the Summary of Argument or Argument portion of their brief to support the claim that the trial court improperly limited their cross-examination of Mr. Davidson and Professor Wiss. Pennsylvania Rule of Appellate Procedure 2119(a) specifically requires that issues identified on appeal must be supported by pertinent authority. We have held that issues identified on appeal but unsupported by citation to proper authorities are deemed to have been abandoned. *Dougherty, supra.* "Since appellant[s] failed to refer to any authority in support of their contention that the trial court erred, the claim is waived." *Dougherty*, 661 A.2d at 388 (citation omitted).

 We note that even if appellants' claim was not waived, it would be meritless. As noted above, appellants have the burden of showing that an evidentiary ruling was in error *and* prejudicial. *Dougherty, supra.* While appellants have alleged that it was error for the trial court to preclude the cross-examination of Mr. Davidson and Professor Wiss concerning the "reverse-bleed" theory, they have failed to indicate in what specific way the cross-examination of these experts concerning the "reverse-bleed" theory was critical to their case or would have affected the outcome at trial.[4] The only allegation of prejudice which can be gleaned from appellants' appellate

4. During pre-trial proceedings, decedent's estate contended that General Motor's gear selector was defective because it failed to incorporate a lockout device which would prevent inadvertent shifting from neutral to reverse. The parties referred to this as the "reverse-bleed" theory. Prior to trial, decedent's estate narrowed its focus, withdrew its negligence claim and withdrew its "reverse-bleed" theory claim.

brief regarding this issue is that because of the trial court's limitation on their cross-examination of Mr. Davidson, they allegedly were not given the opportunity to impeach his credibility. However, a careful review of the record reveals that appellants did in fact extensively impeach Mr. Davidson's credibility. While appellants were not permitted expressly to question Mr. Davidson in depth about his "reverse-bleed" theory of causation, they were permitted to inquire as to whether he had changed his theories of causation during trial and the reasons for any alleged changes. Accordingly, we fail to see how appellants were prejudiced by the trial court's evidentiary rulings regarding the cross-examination of Mr. Davidson and Professor Wiss.

Appellants next argue that the trial court erred in entering a directed verdict in favor of General Motors. Again, appellants have failed to cite any pertinent authority supporting their contention. Accordingly, this issue is deemed waived on appeal. *Dougherty, supra.*[5]

Appellants next contention is that the trial court improperly denied Emerson Electric Company's (Emerson) motion for a directed verdict. Specifically, appellants contend that Emerson's motion for a directed verdict should have been granted because it did not manufacture or sell the digger-derrick truck at issue and successor liability was not proven at trial. We disagree.

---

5. Assuming *arguendo* that this issue was not waived on appeal, we would find it to be meritless. As previously discussed, the law is clear that in order to recover in a strict products liability action plaintiff must prove that the product in question was defective and that the defect caused the injuries at issue. *Dietrich, supra.* Moreover, the plaintiff must demonstrate that the injury-causing defect existed at the time the product left the control of the defendant. *Id.* Here, on appeal, appellants, the parties opposing the directed verdict in favor of General Motors, were required to show that evidence introduced at trial demonstrated that the truck was defective at the time it left the control of General Motors. This they have failed to do. In its opinion, the trial court concluded that "there exists no evidence of record to suggest that the General Motors chassis at issue or any component thereof was defective." Because this finding is supported by the record, we will not reverse it on appeal. *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 636 A.2d 156 (1994).

Our standard of review when considering a motion for a directed verdict is well-settled. We may reverse the trial court's denial of a directed verdict only if we find an abuse of discretion or an error of law which controlled the outcome of the case. *Walker v. Grand Central Sanitation, Inc.*, 430 Pa.Super. 236, 634 A.2d 237 (1993). "We must also consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to [Mr. Childers' estate], the verdict winner." *Id.*, 634 A.2d at 240 (citation omitted). Viewed in this light, the evidence regarding this issue can be summarized as follows: In 1951, Mr. Ray Pitman formed Pitman Manufacturing Company (Pitman) which manufactured cranes and hydraulic truck units, an earlier version of the digger-derrick truck. In 1961, A.B. Chance purchased a majority of Pitman's stock and eventually purchased Pitman's entire assets. A.B. Chance continued to use the Pitman name and manufactured the same products. The digger-derrick truck at issue in this case was manufactured and sold by the Pitman division of A.B. Chance in 1970.

In May of 1975, A.B. Chance sold its assets, including the Pitman division, to Emerson. As a result of this deal, A.B. Chance became a wholly owned subsidiary of Emerson and Pitman remained a division of A.B. Chance. Emerson continued to use the Pitman name and manufactured the same products, including the digger-derrick truck. Mr. Stephen Paul Frauen, an Emerson representative, testified that Pitman was known in the industry as a "major manufacturer," and that Emerson maintained the Pitman name and Pitman's product identification because of customer recognition. He also indicated that throughout his employment with Emerson he filled accessory orders for the digger-derrick truck. In 1983, Emerson's Pitman division was sold to a Canadian company, and, therefore, Emerson ceased the manufacture of the digger-derrick truck.

"The general rule is that when one company sells or transfers all of its assets to a successor company, the successor does not acquire the liabilities of the transferor corporation merely because of its succession to the transferor's as-

sets." *Dawejko v. Jorgensen Steel Company,* 290 Pa.Super. 15, 434 A.2d 106, 107 (1981) (citations omitted).

> However, the general rule does not apply and liability attaches to the successor when one of the following is shown: 1) The purchaser expressly or impliedly agrees to assume such obligation; 2) The transaction amounts to a consolidation or merger; 3) The purchasing corporation is merely a continuation of the selling corporation; 4) The transaction is fraudulently entered into to escape liability; 5) The transfer was not made for adequate consideration and provisions were not made for the creditors of the transferor; and, 6) The successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner. The successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor. [This has been labeled the "product-line" exception.]

*Simmers v. American Cyanamid Corporation,* 394 Pa.Super. 464, 576 A.2d 376, 386 (1990) (citations omitted).

■ The trial court held that Emerson was subject to strict liability for the alleged defects in the digger-derrick truck at issue under the "product-line" exception, and, therefore, denied its motion for a directed verdict. We agree with the trial court that Emerson was subject to successor liability under the "product-line" exception. Here, the evidence established that Emerson purchased all of A.B. Chance's assets, including the Pitman division, continued to manufacture and sell the digger-derrick truck under the name of its predecessor (Pitman) and enjoyed the good will of its predecessor's (Pitman's) reputation. Under the "product-line" exception, this Court has held that where one corporation acquires all of the manufacturing assets of another corporation and undertakes essentially the same manufacturing operation as the selling corporation, as was the case here, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its prede-

cessor. *Dawejko, supra.* Accordingly, the trial court did not err in denying Emerson's motion for a directed verdict.

Appellants' final contention is that the trial court erred in refusing to submit the issue of contribution to the jury. Appellants contend that Sunrise Equipment and Supply Company (Sunrise) and Power Line Equipment Rentals, Inc. (Power Line) negligently failed to install back-up alarms after the digger-derrick truck was sold by appellants. Appellants argue that because they filed an Amended Answer with New Matter they were entitled to have the jury consider the issue of contribution. We disagree.

Under the Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S.A. §§ 8321–27, there is a right to contribution among joint tortfeasors. Joint tortfeasors are defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property. . . ." 42 Pa.C.S.A. § 8322. "Under the Act, joint tortfeasors are entitled to contribution if they have paid more than their pro rata share of this common liability. Contribution is obtainable even if the two defendants are held liable upon different theories of recovery." *Mattia v. Sears, Roebuck & Company,* 366 Pa.Super. 504, 531 A.2d 789, 791 (1987) (citations omitted). Therefore, the fact that appellants in this case were held liable based upon strict liability does not preclude contribution from negligent third parties. *See Mattia, supra.*

The right of contribution may be asserted during the original proceeding via joinder of third-party defendants or it may be pursued in a separate action brought by a tortfeasor who has previously been held liable to the original plaintiff. *Mattia, supra.*

> [However,] [w]hether the third-party defendants [are] brought into the original action or later sued in a separate proceeding, a complaint based upon contribution must conform to the applicable Rules of Civil Procedure. In the complaint, the original defendant must plead sufficient facts to sustain a cause of action against the new defendant. They may not rely on bald assertions but must plead the

material facts necessary to establish their claim. At trial, [defendants] are not entitled to insist on a jury instruction on any claim which has not been ... pleaded [properly].

*Mattia,* 531 A.2d at 792 (citations omitted).[6]

Here, appellants' Amended Answer with New Matter contains insufficient facts to hold appellees Sunrise and Power Line liable in negligence. Appellants have not alluded to any factual basis for a claim that Sunrise and Power Line were negligent. In fact, in this case, appellants have not even averred that Sunrise and Power Line were negligent. In their Amended Answer with New Matter, appellants stated the following:

29. If any of the allegations averred by plaintiff in her complaint or Amended Complaint which pertain to the other defendants herein are, in fact, proven at time of trial, these defendants, Pitman, Chance and Emerson, are entitled to and claim contribution and/or indemnity from such other defendants jointly or severally and for this purpose assert this New Matter pursuant to Pa.R.Civ.P. 2252(d) in the nature of a cross-claim.

30. If, in fact, the death of plaintiff's decedent was caused by any act of any other defendant herein, then, to that extent, these defendants, Pitman, Chance, and Emerson, file the within New Matter in the nature of a cross-claim to preserve their right to indemnity and/or contribution, jointly or severally against said parties.

As is evident from the face of appellants' Amended Answer with New Matter, appellants did not expressly incorporate by reference the averments of negligence against Sunrise and Power Line made by plaintiff in her complaint. Rather, appellants simply stated that if plaintiff successfully proved

**6.** Pennsylvania Rule of Civil Procedure 2252(d) provides, in relevant part, that "If the person sought to be joined is a party the joining party shall, without moving for severance or the filing of a praecipe for a writ or a complaint, assert in his answer as new matter that such party is alone liable to the plaintiff or severally liable to the plaintiff or liable to the joining party directly *setting forth the ground therefor.*" (emphasis added).

negligence, they reserved their right to contribution. As discussed previously, prior to trial, plaintiff withdrew the negligence claims and proceeded to trial solely on the basis of strict liability. There is no question that plaintiff failed to prove that Sunrise and Power Line were negligent. Accordingly, because appellants failed to set forth sufficient facts for a claim of negligence, the trial court did not err in refusing to submit the issue of contribution to the jury.[7]

For all of the foregoing reasons, the trial court's judgment is affirmed.

Affirmed. Application for relief granted.

---

7. We note that in her appellate brief, appellee raised an additional argument which was neither discussed nor raised in appellants' brief. Appellee's additional argument was that a new trial is not warranted because appellants' witness, Stephen Frauen, admitted during trial that the digger-derrick truck's operator's station was not "safe." In response to appellee's brief, appellants filed a reply brief. In their reply brief, appellants made two arguments. In Argument I, they denied appellee's allegation that Mr. Frauen had admitted that the operator's station was not "safe." In Argument II, they essentially reargued that decedent's conduct should have been admitted into evidence.

In light of the fact that we have found all of appellants' arguments to be meritless, we conclude that it is unnecessary for us to address the appellee's additional argument or appellants' response thereto in Argument I of their reply brief. As for Argument II of appellants' reply brief, we note that appellee filed an Application For Relief Pursuant to Appellate Rule 123(a) requesting that this Court strike the argument. Because Argument II of appellants' reply brief merely reargues issues previously raised in appellants' brief, we grant appellee's Application For Relief and strike Argument II of appellants' reply brief. *Park v. Chronister*, 151 Pa.Cmwlth. 562, 617 A.2d 863 (1992). *See* Pa.R.A.P. 2113.