590 A.2d 11

**James CONNELLY and Sharon Connelly, Appellants,**

v.

**ROPER CORPORATION.**

Superior Court of Pennsylvania.

Argued Nov. 29, 1990.

Filed March 21, 1991.

Reargument Denied May 23, 1991.

68

James M. Marsh, Philadelphia, for appellants.

Gerard J. St. John, Philadelphia, for appellee.

Before OLSZEWSKI, TAMILIA and HESTER, JJ.

HESTER, Judge:

In this products liability action, James and Sharon Connelly, appellants, question two of the trial court's evidentiary rulings. We affirm.

Appellants instituted this action to recover for damages sustained when Mr. Connelly's hand was injured by a snow thrower manufactured by Roper Corporation and sold by Sears, Roebuck and Co., appellees, in 1968. On December 12, 1982, Mr. Connelly was operating the snow thrower, which he had purchased used at a yard sale earlier that year. Although the label of the chute contained a warning to keep hands clear of the chute, Mr. Connelly placed his hand in the chute in order to clear a chunk of snow that was blocking it. As Mr. Connelly placed his hand in the chute, the unit rolled forward and the chute's blade, which was rotating at the time, sliced his hand. The unit rolled forward because the machine slipped into gear from a neutral position due to vibration caused by the engine. The evidence established that between the time of its 1968 manufacture and the 1982 accident, the snow thrower had undergone substantial changes that resulted in an increase in both engine speed and vibration.

At trial, appellants alleged that the design of the unit was defective in that it did not have three safety devices that would have prevented the accident. The devices were a deadman's mechanism that stops the engine when the mech-

anism is released, separate controls for the wheels and the impeller blade, and a hook-type of detent for the clutch lever. Appellants' expert testified that if there had been a detent to hold the clutch in place and separate controls for the blade and engine, machine vibration would not have caused the gear to engage, and in addition, the impeller blade would not have turned unless manipulated manually. With these safety devices, the impeller blade would not have rotated when Mr. Connelly placed his hand in the chute, and in addition, the unit could not have vibrated into gear. Appellants' expert also testified that these safety features were available in 1968 and incorporated into other units manufactured that year.

Appellees contended that the accident was caused by Mr. Connelly's failure to heed the warning to keep his hand out of the chute and by increased engine vibration caused by post-sale repairwork performed on the unit. Appellees' expert, who designed the unit, also testified that the safety features discussed by appellants' expert could not have been incorporated in 1968 into this particular unit because the features caused different safety problems at that time. The jury returned a verdict in favor of appellees. This appeal followed denial of appellants' post-trial motions.

Appellants allege first that the trial court erred in not permitting them to cross-examine appellees' expert regarding industry safety standards and design changes adopted after the unit was sold. Although appellants *suggest* in their brief that the prohibited cross-examination concerned the fact that other 1968 units had the safety features deemed impractical by appellees' expert, the record belies this assertion. Instead, when appellants' cross-examination of the witness was restricted, appellants were attempting to introduce evidence about post-1968 design changes made to snow throwers manufactured by Roper and other manufacturers. We have reviewed the entire cross-examination of appellees' expert and have found two instances where cross-examination was restricted. First, appellants asked if Roper Corporation ever incorporated

any of the three relevant safety features into the design of snow throwers *after* discontinuing the manufacture of this unit:

Q. THIS IS AN OUTDOOR POWER INDUSTRY, AND IT IS THIS TYPE OF PRODUCT, IS THAT RIGHT?

A. THIS IS CONFINED TO JUST THE NORTHERN STATES.

Q. AFTER THIS PRODUCT WAS DISCONTINUED, DID ROPER CONTINUE TO MAKE SNOWTHROW-ERS?

A. YES, I BELIEVE THEY DID.

Q. DID THEY INCORPORATE ANY OF THESE INTO THE DESIGN OF THE PRODUCT?

MR. ST. JOHN: OBJECTION.

THE COURT: SUSTAINED. WE ARE CON-CERNED ABOUT THE TIME THAT THIS UNIT WAS MANUFACTURED, DESIGNED AND SOLD. WHAT MAY HAVE HAPPENED LATER IS NOT BEFORE US. SO, WE ARE NOT GOING TO GO INTO THAT IF ANYTHING HAPPENED LATER, WE DON'T KNOW, BUT WE ARE NOT GOING INTO THAT.

R.R. at 284a. At one other point, the trial court sustained an objection to appellants' cross-examination. There, appellants admitted that their "question [was] whether there is any difference in the technology between '68 and the present," and that based on the expert's answer, they intended to explore that matter further. *Id.* at 263a. It is also clear that appellants were permitted to cross-examine the expert with the fact that other units manufactured in 1968 did have those three safety features. *Id.* at 285–86a. Thus, appellants characterized incorrectly the issue presented. The trial court ruling was that appellants could not question whether Roper Corporation made design changes to snow throwers that it manufactured after 1968.

As to this evidentiary ruling, *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222 (1985), is dispositive. In *Gottfried,* we determined that where the product involved was manufactured and sold in 1977, it was irrelevant

that in 1980 the product had safety features not present in the 1977 product. We concluded that design improvements made after the sale of the product are not relevant to the issue presented in a products liability case, which is whether the product was safe when sold. *Compare Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989) (issue did not involve design changes, but post-sale repair work performed on the unit that actually injured the plaintiff); *Matsko v. Harley–Davidson Motor Co.*, 325 Pa.Super. 452, 473 A.2d 155 (1984) (issue was not design changes to the unit, but post-accident manufacturer recall of the unit which injured plaintiff).

In the present case, appellants were not prevented from showing that the relevant safety features were available in 1968. This was brought out on cross-examination and during their case-in-chief. The only limitation imposed by the trial court was that appellants could not question the expert concerning design changes made after the 1968 sale date. This limitation was imposed properly under our decision in *Gottfried.*

■ Appellants' second objection to the trial proceedings has been waived. They argue that the trial court erred in permitting appellees' expert to testify that he was not aware of any reports of accidents resulting from the absence of the three relevant safety features. However, this issue was not raised in post-trial motions or in appellants' brief in support of those motions, and it was not addressed by the trial court in its decision denying post-trial motions. Accordingly, it has been waived. Pa.R.Civ.P. 227.1; *Cucchi v. Rollins Protective Services Co.*, 377 Pa.Super. 9, 19, 546 A.2d 1131, 1136 (1988), *reversed on other grounds*, 524 Pa. 514, 574 A.2d 565 (1990). Judgment Affirmed.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

The majority relies upon *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222 (1985), for the proposition

that evidence of subsequent design changes are inadmissible in a strict products liability case. *Gottfried* does appear to stand for that principle; however, I believe that the *Gottfried* holding is inconsistent with its own fact pattern, and consequently the similar fact pattern presented here. The *Gottfried* court noted that when it is alleged that a product has been defectively designed, a jury is required to determine whether the product lacked any safeguard necessary to make it for normal use. *Id.,* 339 Pa.Super. at 410, 489 A.2d at 226 (citations omitted). In such cases, the state of the art at the time of the design/manufacture is relevant. *Id.* (citations omitted). These are accurate statements of the applicable law with which I have no quarrel. My objection lies in the application of those principles to the fact pattern at issue in *Gottfried* and the case at bar.

In *Gottfried,* the plaintiffs were allowed to introduce evidence that other cans had certain safety design features in 1977, the year the can in question was manufactured. The court, however, prevented the plaintiffs from introducing evidence that American Can Co. had incorporated some of those same safety features, available in 1977, in their products in 1981. *Id.,* 339 Pa.Superior Ct. at 409, 489 A.2d at 225–226. The *Gottfried* court stated: "Design improvements *made four years after an injury has occurred are not relevant to show the state of the art at the time the injury occurred."* *Id.,* 339 Pa.Superior Ct. at 410, 489 A.2d at 226 (emphasis added). While this may or may not be an accurate statement of the law as to the relevance of design improvements first made after the manufacture of the product in question, and so, not probative of compliance with the state of the art at the time of manufacture, it simply is not factually applicable to either *Gottfried,* or the case at bar. These are not design improvements first occurring after the time of design/manufacture of the product in question. Both cases present instances of safety features already available at the time of manufacture; in fact, both cases show evidence that the defendants' competitors had already incorporated those safety features when

the product alleged to be defective was manufactured. It is highly relevant to the question of defective product that a manufacturer subsequently incorporates safety features available at the time of manufacture. This evidence shows that a manufacturer chose to produce an item which was not as safe as it could be considering the state of the art at the time of production. Further, the same manufacturer now considers these same safety features worthy of incorporation into the product in question.

The factual scenario to be presented to the jury is as follows: ALPHA, the product in question, was manufactured by defendant in year 1 without safety features X, Y and Z which were available in year 1. Competitors of defendant manufactured their product, BETA, in year 1 incorporating those safety features X, Y and Z. The plaintiff was injured while using ALPHA, manufactured in year 1 without safety feature X, Y and Z. In year 5, defendant incorporated safety features X, Y and Z, which had been available in year 1, into his product, ALPHA. These facts are obviously relevant to the question: was ALPHA defective when manufactured in year 1 without safety features X, Y and Z which were available at the time?

I question the viability of *Gottfried*, which I believe materially misstates the factual posture of the case. The public policy underlying the exclusion of subsequent repairs in negligence cases is not applicable to strict liability. *Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 265, 564 A.2d 165, 173 (1989), *alloc. denied*, 525 Pa. 619, 577 A.2d 890 (1990); *Wilkes–Barre Iron v. Pargas of Wilkes–Barre*, 348 Pa.Super. 285, 293 n. 2, 502 A.2d 210, 214 n. 2 (1985); *Matsko v. Harley Davidson Motor Co., Inc.*, 325 Pa.Super. 452, 454–462, 473 A.2d 155, 156–159 (1984). Exclusion of such evidence is no longer necessary to avoid discouraging remedial acts by defendants:

> [T]he ... economic realities ...—among others, the growing market share of the mass manufacturer, the well-nigh universality of insurance, the escalation of government regulation—undermine any assumption that it is neces-

sary to pay the price of sheltering defendants in strict products liability litigation from evidentiary use of their product changes in order to persuade them to make improvements ...

manufacturers realize that liability insurance companies will not continue to insure the further production of known defective products ... manufacturers are well aware of the marketing impact which adverse publicity can have on future sales ...

*Matsko, supra,* 325 Pa.Superior Ct. at 459–60, 473 A.2d at 158–159 [*quoting, Caprara v. Chrysler Corp.,* 52 N.Y.2d 114, 125, 436 N.Y.S.2d 251, 256, 417 N.E.2d 545, 550 (1981) and Davis, *Evidence of Post–Accident Failures, Modifications and Design Changes in Products Liability Litigation,* 6 St. Mary's L.J. 792, 798–799 (1975) (footnote omitted) ].

I believe that the subsequent incorporation of a safety design feature available at the time of manufacture qualifies as a subsequent remedial measure and is therefore admissible in a strict products liability case. In such a case, the manufacturer is held liable for manufacturing a product lacking a safeguard, available at the time of manufacture, necessary to make it safe for normal usage. Of course, the manufacture, remains free to introduce evidence that the particular safety features he subsequently incorporated were not available at the relevant time, or, perhaps, that the safety features available at the time of manufacture were incompatible with his product and so, in effect, unavailable to him.

Nor am I convinced that the actions of Mr. Connelly were so reckless that exclusion of this evidence was harmless error. The safety features at issue here would have prevented this unfortunate occurrence despite Mr. Connelly's placing his hand into the chute of the snowblower. Clearly, the industry was aware that individuals using snowblowers occasionally placed their hands in the chute. Without the evidence indicating Roper Corporation had subsequently decided to incorporate the then existing safety features, the jury could not properly determine whether Mr. Connelly

"would have been injured despite the curing of any defect", or whether his conduct was "so extraordinary and unforeseeable as to constitute a superseding cause." *Gottfried, supra,* 339 Pa.Super. at 409, 489 A.2d at 225 [*quoting, Burch v. Sears Roebuck & Co.,* 320 Pa.Super. 444, 452, 467 A.2d 615, 619 (1983) (citations omitted)]. Accordingly, I would remand this case for a new trial.

I respectfully dissent.