Monali PHATAK and Mohan
Phatak, Appellants,

v.

UNITED CHAIR COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 9, 2000.

Filed July 12, 2000.

draw, which caused dismissal of his first

Paul J. Drucker, Philadelphia, for appellants.

PCRA appeal.

Joseph T. Bodell, Philadelphia, for appellee.

Before: MUSMANNO, ORIE MELVIN and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from a judgment entered in Appellee's favor in a products liability action. Appellants raise four issues for our consideration, which we restate as follows: whether the court erred in preventing Appellants from referencing, for any reason, a chair manufactured by Appellee that possessed the design feature Appellant's expert opined would remedy the defect the chair in question possessed; whether the court erred in refusing to preclude testimony of misuse of the chair; whether the actions of the court demonstrated prejudice and bias against Appellants and whether the charge of the court was incorrect with respect to critical aspects of the case? We vacate the judgment and remand for a new trial.

¶ 2 Appellant, Monali Phatak, avers that she sustained personal injury in August 1993, while at work, when a chair in which she was sitting tipped forward causing her to fall from the chair. The chair, manufactured by Appellee, was a "standard secretarial chair," with four legs/outriggers emanating from a central spindle. The accident occurred while Ms. Phatak was leaning forward attempting to pick up a pen that she had dropped on the floor. At trial, Appellants averred that the chair was defectively designed in that the legs/outriggers did not extend all the way out to the end of the seat of the chair. This design, according to Appellants, made the chair unstable and prone to tipping over but could have been easily remedied by merely extending the legs a few inches so that they extended past the edge of the seat. Appellee introduced evidence that Appellant had been sitting with her legs wrapped around the base or outriggers and argued that this "misuse" of the chair was the reason the chair tipped and she fell from it.

¶ 3 At trial, in support of their legal theory, Appellants attempted to introduce evidence that Appellee manufactured chairs which contained the exact design feature that they assert would have rendered the chair in question "safe." However, they were prevented from doing so. After the close of evidence the jury found, by special interrogatory, that the chair was not defective. Thus, judgment was entered for Appellee. Appellants filed post-trial motions for new trial, but were denied relief. This appeal followed.

¶ 4 Appellants first assert that the Court erred in refusing to allow them to introduce, for any reason, evidence that Appellee currently designed and marketed models of chairs that lacked the alleged design defect that Appellants assert the chair in question possessed. We agree.

¶ 5 With respect to the grant or refusal to grant a new trial upon allegations of error in the admissibility of evidence we have stated:

> Decisions regarding the admissibility of evidence are within the discretion of the trial court and will be reversed on appeal only if the trial court abused its discretion or committed an error of law. ... We will grant a request for a new trial based upon a trial court's evidentiary rulings only if those rulings not only are erroneous, but also are harmful to the complaining party. ... Evidence is relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption about the existence of a material fact.

(Citations omitted).

*Southard v. Temple University Hospital,* 731 A.2d 603, 615 (Pa.Super.1999).

¶ 6 Reduced to its bare essence, Appellants' theory of liability was that the chair Appellant was seated on, and from which she fell, featured a defective design in that the chair overhung the legs or "outrig-

gers" creating an increased potential for tipping over. The chair in which Appellant was seated featured legs that stopped a few inches short of the perimeter of the chair. They alleged that a chair design that featured longer legs/outriggers would have had more stability and been less prone to tipping when there was a weight shift away from the center of the chair. In fact, Appellee manufactured other chair models where the legs/outriggers extended to the perimeter of the chair. Appellants attempted, in two specific contexts, to introduce evidence that Appellee manufactured other chairs with the design feature they argue made the chair safer, and were foiled in each attempt.

¶ 7 The first attempt occurred while Appellants' expert was describing the alleged defect and the "simple and direct" method for remedying the defect. Appellants' counsel desired to have the expert identify a chair in the courtroom with a similar design to illustrate what he was talking about. This chair happened to be a Model S–11 chair manufactured by Appellee. The Court sustained a defense objection to the identification.

¶ 8 The second attempt came after Appellee's expert witness asserted that extending the outriggers would have created an "unbelievable" and "unacceptable" safety/tripping hazard to people walking by, or around, the chair. After Appellee's expert made these assertions, Appellants' counsel

attempted to cross-examine him by utilizing Appellee's 1997 catalog which featured chairs with the design feature Appellee's expert had indicated would provide an "unbelievable" and "unacceptable" hazard. However, Appellants were thwarted in their attempts at this cross-examination and in their attempts to question Appellee's corporate representative on rebuttal as to this matter.

¶ 9 The attempts to introduce evidence that Appellee manufactured chairs with outriggers extending past the perimeter of the chair implicates at least four admissibility/evidentiary issues, evidence by demonstration, evidence of an alternative design, evidence of a subsequent design change/remedial measure and rebuttal/impeachment. Since Appellants' counsel was essentially prevented from arguing the basis for which he wished to introduce the evidence,[1] we must consider all the bases for admission argued on appeal.[2]

■ ¶ 10 Citing to *Mendralla v. Weaver Corp.,* 703 A.2d 480 (Pa.Super.1997), Appellants assert that they should have been allowed to refer to other chairs manufactured by Appellee to demonstrate the "feasibility" of producing a chair with the design feature they proffered. We agree. *Mendralla* clearly states that evidence of a subsequent design change is probative of the feasibility of an alternate design. *Id.,* 703 A.2d at 484, n. 2.[3] As such, based upon

---

1. When Appellants' counsel began to ask the expert witness whether there were any chairs in the courtroom that featured the design he had been discussing, Appellee's counsel quickly objected and the objection was, likewise, rather promptly sustained. Appellants' counsel then requested a sidebar discussion but the request was denied.

2. Obviously, rebuttal was not implicated in Appellants' attempt to refer to the chair during direct examination of their expert witness.

3. We acknowledge that there appears to be at least confusion, if not outright conflict, in our caselaw on this matter, or at least the appearance of such. *See,* comment, Pa.R.E 407.

  *Connelly v. Roper Corp.,* 404 Pa.Super. 67, 590 A.2d 11 (1991), indicates that subsequent

design changes are not admissible to prove defective design because what is at issue is the design at the time the subject product was manufactured. *Connelly,* however, would seemingly allow evidence of other design alternatives that existed at the time the subject product was manufactured as would *Gottfried v. American Can Co.,* 339 Pa.Super. 403, 489 A.2d 222 (1985), which also concluded that subsequent safety features were irrelevant to the safety of a product manufactured previously.

  *Duchess v. Langston Corp.,* 709 A.2d 410 (Pa.Super.1998), *appeal granted, in part,* 556 Pa. 435, 729 A.2d 69 (1999), seemingly departed from *Connelly* and *Gottfried,* by allowing a subsequent design change/improvement to be introduced to prove a design defect. The *Duchess* panel justified this decision by

this reason alone, the evidence should have been allowed.

■ ¶ 11 Also at issue is evidence of an alternative design. It would seem that this was the primary focus of the trial court in denying Appellant an opportunity to show or refer to another chair. This fact is evidenced by the Court's response to the objection of Appellee's counsel. Appellee's counsel asserted, while objecting, "what's at issue here is this chair," to which the court replied, "right." N.T. 4/5–7/99, at p. 253. Nevertheless, it appears that the court erred in this respect. In *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222 (1985), we indicated that in a defective design case it is relevant to show the "state of the art" in design safety at the time the product was manufactured. Both *Gottfried,* and *Connelly v. Roper Corp.*, 404 Pa.Super. 67, 590 A.2d 11 (1991), seemingly support the practice of allowing reference to other similar products for purposes of showing alternative design features available at the time the product in question was manufactured.[4] In other words, such evidence is allowed to show the "state of the art" of safety design at the time in question. Consistent with this principle there would seem to be no impediment to including other products of the defendant manufacturer if they otherwise fell within the ambit of this rule.[5]

■ ¶ 12 Also with respect to this issue of admissibility of the subject evidence, Appellants lastly assert that they should have been allowed to cross-examine Appellee's expert and/or enter other evidence that Appellee manufactured chairs in which the legs extended past the perimeter of the chair after Appellee's expert asserted that doing so would have created an "unbelievable" and "unacceptable" hazard. We agree with this contention as well.

¶ 13 In the case of *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169, 1172 (1997), our Supreme Court indi-

noting that the type of device at issue, the interlock, was widely used at the time the machine in question was manufactured. The *Duchess* court also justified its decision by arguing that it was evidence of a "subsequent repair" and fell under *Matsko v. Harley Davidson Motor Co.*, 325 Pa.Super. 452, 473 A.2d 155 (1984). *Matsko* held that evidence of a recall on a product was admissible in a strict liability case and further held that the so-called "subsequent repair" rule should not be applicable in a products liability case. Judge Del Sole, dissenting in *Duchess,* found the majority's reliance upon *Matsko* "misplaced" noting that a subsequent design change was not a "subsequent repair." *Duchess,* 709 A.2d at p. 416.

With respect to *Mendralla,* although the discussion on the matter was sparse, *Mendralla* seemingly departed from *Connelly* and *Gottfried* asserting that subsequent design changes are relevant and admissible to demonstrate the feasibility of alternative designs. While the Court's discussion on the matter was relegated to a footnote, its holding was quite explicit. Since *Mendralla* was decided by this court sitting *en banc,* the Court had the authority to modify prior precedent of the Superior Court and it is probably best viewed as having done so in *Mendralla,* at least until such time as further guidance is provided.

Moreover, as a panel of the Superior Court we are not free to ignore its holding.

In any event, we note that the Pennsylvania Supreme Court has granted allowance of appeal in *Duchess* limited to the following issue: "Did the Superior Court err in reversing judgment in favor of Petitioner finding that evidence of a subsequent design change was admissible as a subsequent design repair as opposed to a subsequent remedial measure?" Consequently, more definitive guidance may be provided by that court in due time.

4. In *Gottfried,* which involved injury occurring when opening a can of nuts, we noted that the Appellant there had been permitted to show cans manufactured by others at the time the subject can had been made. In *Connelly,* which involved injury caused by a snowblower, the Appellants were permitted to introduce evidence that certain design features they asserted should have been incorporated were available at the time the unit was manufactured.

5. Although Appellee evidently manufactured a chair with outriggers extending past the perimeter of the chair, it is unclear from the record whether Appellee did so at the time the chair involved in the accident here was manufactured or at some later time.

cated the proper focus of a litigant in a products liability case:

> It is well established that the concept of strict liability allows a plaintiff to recover where a product in "a defective condition unreasonably dangerous to the consumer or user" causes harm to the plaintiff.... Pennsylvania law requires that a plaintiff prove two elements in a products liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.... Specifically, in a design defect case, the question is whether the product should have been designed more safely.

(Citations omitted).

Appellee defended the design of its chair by arguing that not only was it "safe" as designed, but that incorporating the design Appellants proffered would have created a substantial hazard to other workers. There can be no question that terms such as "safeness" and "defective" are terms of art subject to relative meaning. As our Supreme Court stated in *Spino*, "the question is whether the product could have been designed more **safely**." This passage suggests an analysis of relativity. A manufacturer could build automobiles to more closely resemble tanks. This might make them safer but, from a societal standpoint, it is unlikely doing so would be viewed as a valid trade-off, particularly if, in the process, other danger is created. In *Riley v. Warren Manufacturing, Inc.*, 455 Pa.Super. 384, 688 A.2d 221 (1997), we discussed some of the factors that go into this analysis, which had been first introduced in the case of *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984). We mentioned:

> The gravity of the danger posed by the challenged design; the likelihood that such danger would occur; the mechanical feasibility of a safer design; and the adverse consequences to the product and to the consumer that would result from a safer design.... The Court also

cited to additional factors, which included:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of a product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe;
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility on the part of the manufacturer, of spreading the loss of setting the price of the product or carrying liability insurance.
> These additional factors were derived from an article by Dean John Wade of Vanderbilt University, "On the Nature of Strict Tort Liability for Products," 44 Miss.L.J. 825, 837–38 (1973).

(Citations omitted).

Thus in determining whether the design of a product is "defective" or "unreasonably dangerous," or whether a product could have been designed "more safely," many factors could seemingly be weighed by the jury in reaching the ultimate conclusion whether a product was defective or not.

¶ 14 The question before us, as we see it, is whether an assertion that a design change would make a product "unbelievably hazardous" to other persons enters into the equation of whether the product is "defective" for products liability purposes. We think the answer is yes. Accordingly,

by interjecting this factor into the equation in the present case Appellee "opened the door" and its assertion should have been open to rebuttal, including the introduction of evidence that Appellee, itself, utilized this design feature in certain of its chairs.

¶ 15 Among the factors quoted above for determining whether a product is "defective" is "the adverse consequences to the product and to the consumer that would result from a safer design." This factor would seemingly implicate the contention made here. If, in fact, making the chair in question "safer" for its occupant also created an "unbelievable hazard" to others, the risk-utility is essentially negative. The safety utility to the occupant would seemingly be outweighed by the extra risk created to others. The same could be said if, as used in example above, an automobile were made to resemble a tank. It might make its occupants safer, but if in so doing it creates an unacceptable hazard to other motorists or pedestrians, the risk-utility is negative and the product design feature should be thought of as a negative, not a positive.

¶ 16 Similarly, one of the "additional factors," quoted above, also supports this analysis. One of the "additional factors" reads "the usefulness and desirability of the product—its utility to the user and to the public as a whole." If, as Appellee contended, extending the outriggers would have created an "unbelievable tripping hazard" to others, its overall "usefulness," "desirability" and "utility" would be adversely affected. Thus, Appellee's contention must be thought of as having had a bearing on the determination of whether the chair was defectively designed.

¶ 17 In a similar context we indicated that a defendant's expert's testimony suggesting that introducing a specific design feature would have been impractical opened the door to evidence that the design was practical. This included the introduction of evidence that the same manufacturer had later incorporated the exact design feature in question. The case mak-

ing this holding was the above-discussed *Duchess v. Langston Corp.*, 709 A.2d 410 (Pa.Super.1998), and the design feature in question was an interlock device.

¶ 18 *Duchess* involved a plaintiff who sustained injury to his hand, including the loss of fingers, when his hand was grabbed by moving rollers in a box-making machine. The theory of products liability was that the machine was defectively designed because it did not have an interlock (cutoff) device that would have shut down the rollers when an ink shield had been removed. The defendant's expert had testified in a manner that this Court characterized as questioning the practicality of installing an interlock device. Yet, the defendant had, in fact, installed an interlock device in subsequent versions of the machine in question. When the plaintiff attempted to introduce evidence that the defendant had incorporated an interlock device he was precluded from doing so. We reversed. In this Court's opinion, the expert's testimony invited rebuttal and allowed the introduction of the evidence.

¶ 19 In the present case the issue of the safeness of extending the outriggers was a matter made relevant by Appellee's assertion that doing so would create an "unbelievable hazard" to others. Since, as determined above, the safeness of the proposed design feature was a factor that was relevant to the determination of whether the chair was "defectively designed," Appellants should have been allowed to introduce evidence that Appellee manufactured other chairs incorporating this design feature. As we stated in *Duchess*, "the fact that appellee's (sic) subsequently incorporated the interlock made it more likely than not that the interlock was not impractical. Thus, we agree with appellant's contention that once appellee's expert questioned the practicality of the interlock, appellants should have been permitted to show that the interlock had been incorporated on the machine." *Id.*, 709 A.2d at p. 415. Similarly, the fact that Appellee extended

the outriggers on certain of its other chairs certainly rebuts the assertion that doing so creates an "unbelievable hazard" to other workers. Thus, Appellants should have been permitted to introduce that evidence.

¶ 20 Both Appellee and amicus, Pennsylvania Defense Institute (PDI), address the applicability of *Duchess*, but neither adequately refutes the premise above. The entire discussion of *Duchess* in amicus' brief relates to the issue of a remedial measure/design change. While this discussion had relevance to the matters discussed in the first part of the opinion, PDI's brief does not discuss the opening of the door and rebuttal aspects of *Duchess*.

¶ 21 In contrast, Appellee's brief does address the rebuttal aspect of *Duchess* briefly, but simply argues that Appellee's expert here did not discuss practicality. While this is true, in our opinion the premise of *Duchess* does not hinge solely upon the introduction of a practicality/feasibility issue. Any matter relevant to the design defect determination interjected by a defendant would also implicate the holding of *Duchess*. The essence of the *Duchess* holding as to the cross-examination/rebuttal matter was that the defendant made an assertion that related to the design defect determination thereby allowing the plaintiff to rebut the assertion. Moreover, in *Duchess* the assertion, in essence, discredited the design feature proffered by the plaintiff, which entitled the plaintiff to show that the defendant had indeed incorporated the design discredited by the expert. Here, Appellee's expert discredited the proposed design by suggesting it would create an "unbelievable hazard." Thus, Appellants were entitled to show that Appellee in fact incorporated this design feature in some of its chairs.

¶ 22 For the various reasons discussed above, we conclude that the Court erred in preventing reference to other chairs manufactured by Appellee that featured the design feature in question. Furthermore, like the *Duchess* court, we believe this error requires the granting of a new trial. Consequently, we shall grant Appellants a new trial.

¶ 23 Our decision to vacate and remand is premised entirely upon the analysis set forth above. Since none of the issues raised by Appellants will provide greater relief than that already granted we express no opinion as to the merits of the other issues raised by Appellants. For the reasons detailed above, we must vacate the judgment appealed from and remand for a new trial.

¶ 24 Judgment vacated. Remanded for a new trial. Jurisdiction relinquished.

¶ 25 ORIE MELVIN, J., files a Concurring Opinion. MUSMANNO, J., joins both this Opinion by BROSKY, J. and the Concurring Opinion by ORIE MELVIN, J.

ORIE MELVIN, J., concurring.

¶ 1 While I concur with the Majority's resolution of the first issue raised in this appeal, I write separately to address the issue regarding the introduction of misuse evidence, as it will invariably arise upon retrial.

¶ 2 In a products liability action a plaintiff must prove: (1) the product was defective and (2) the defect was a substantial factor in causing the injury. *Charlton v. Toyota Industrial Equipment*, 714 A.2d 1043, 1046 (Pa.Super.1998). Our Supreme Court has refused to permit the introduction of negligence concepts in a strict products liability action. *Kimco Development v. Michael D's Carpet*, 536 Pa. 1, 7–9, 637 A.2d 603, 606–607 (1993); *Jara v. Rexworks Inc.*, 718 A.2d 788, 793 (Pa.Super.1998), *appeal denied*, 558 Pa. 620, 737 A.2d 743 (1999). However, a plaintiff's use of a product is relevant as it relates to causation. *Childers v. Power Line Equipment Rentals*, 452 Pa.Super. 94, 681 A.2d 201, 207 (1996), *appeal denied*, 547 Pa. 735, 690 A.2d 236 (1997). Specifically, a defendant may introduce evidence a plaintiff voluntarily assumed the risk or misused

the product. *Id.; Robinson v. B.F. Goodrich Tire Co.,* 444 Pa.Super. 640, 664 A.2d 616 (1995), *appeal denied,* 543 Pa. 694, 670 A.2d 142 (1996). In addition, a defendant may introduce evidence the plaintiff engaged in reckless conduct to defeat a products liability claim. *Madonna v. Harley Davidson Inc.,* 708 A.2d 507 (Pa.Super.1998). In asserting a misuse defense the defendant must establish the use of the product employed by the plaintiff was unforeseeable or outrageous. *Childers,* 681 A.2d at 207.

¶ 3 In the instant case, the trial court permitted the Appellee to assert a misuse defense to establish Appellant's conduct was the sole cause of her injury and was not related in any way to a product defect. I find the trial court's ruling resulted in the misapplication of the misuse defense, where here, the evidence did not establish the Appellant used the product in an unforeseeable and outrageous manner.

¶ 4 The evidence adduced at trial reveals the Appellant was sitting on the front portion of her chair with her legs wrapped around the base or spindle of the chair when she reached down to retrieve a pen. Although the Appellant did not have her feet placed directly on the floor in front of her, it strains credulity to conclude that at the time of the incident the Appellant was using the chair for something other than its intended purpose, which is sitting. Contributory negligence of a consumer is not a defense in a products liability case nor can it be interpreted at trial. The fact finder cannot compare the negligence of the user with the strict liability of the manufacturer and thus, under the facts of this case, the Appellant's conduct was not an unreasonable misuse of the chair. I recognize the issue of whether conduct involved in misuse is foreseeable is generally a question for the jury. *Dougherty v. Edward J. Meloney, Inc.,* 443 Pa.Super. 201, 661 A.2d 375, 386 (1995), *appeal denied,* 544 Pa. 608, 674 A.2d 1072 (1996). However, I believe the trial court herein should have precluded this particular evidence of misuse because no two reasonable minds could fail to agree that the Appellant's use of the product in question was clearly proper and foreseeable. *See Kramer v. Raymond Corporation,* 840 F.Supp. 333 (E.D.Pa.1993) (holding evidence of plaintiff's alleged misuse for failing to look in direction of travel and keep foot inside operating compartment of forklift properly precluded when conduct could not be described as abnormal).

¶ 5 Accordingly, I believe, where as here, the alleged "misuse" is clearly and reasonably foreseeable and not outrageous, the trial court should have precluded its admission into evidence as a matter of law.

¶ 6 MUSMANNO, J., joins both Concurring Opinion by ORIE MELVIN, J. and Opinion by BROSKY, J.