Michele CLARK, Individually and Executrix of the Estate of Claude J. Clark, III, Appellant,

v.

BIL–JAX, INC. and Stephenson Equipment, Inc. t/d/b/a Service Supply Corp., Appellee.

Superior Court of Pennsylvania.

Argued Sept. 27, 2000.

Filed Dec. 1, 2000.

Kent D. Mikus, Lancaster, for appellant.

Debra Slifkin, Philadelphia, for Bil-Jax, appellee.

Howard Davis, Mountain Top, and Kevin McNamara, Harrisburg, for Stephenson Equipment, appellee.

Before KELLY, ORIE MELVIN and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 This is an appeal from an order entering summary judgment in favor of Appellee, Bil–Jax, in a wrongful death and survival action premised on a theory of strict liability derived from a defect in design.

¶ 2 On July 5, 1995, Appellant's decedent was killed when the metal scaffolding he was holding onto during its relocation at a construction site came into contact with high voltage power lines. The 30' tall scaffolding, manufactured and distributed by Appellee Bil–Jax,[1] was being moved by a rough terrain forklift on which it was supported by a metal lifting bar threaded through its rungs. To stabilize the scaffold during the move, a man held onto either side. When the scaffold struck the power lines, Appellant's decedent, who was on the side of the scaffolding closer to the point of impact, was electrocuted, while the man on the far side received burns on his hands and feet. The accident occurred on the third attempt to move the scaffolding after the first two tries, following routes farther from the power lines, had been impeded by ground too wet to allow passage of the forklift.

¶ 3 On July 1, 1997, Appellant filed a complaint alleging negligence and strict liability. In response to the court's order that all pre-trial memoranda be filed no later than March 18, 1999, Appellant's timely pre-trial memorandum narrowed the issue to strict liability on the basis of design defect only. She offered expert reports to the effect that had Appellees offered either a clamping device to hold the scaffolding onto the forklift, obviating the necessity for manual stabilization, or removable handles of a material which would reduce the transmission of electric current, the decedent would not have been killed. On September 7, 1999, without leave of court, Appellant filed a Supplemental Pre-trial Memorandum advancing a negligence theory. The Memorandum was stricken on Appellees' motion in the court's Omnibus Pre-trial Order of September 30, 1999, which resolved all the numerous evidentiary motions filed by the parties. Included in this order were the trial court's directives precluding the presentation of expert testimony regarding defects in the design, testing and sale of the scaffolding, and permitting the introduction of evidence concerning the negligence of the decedent and/or his coworkers. Thereafter, Appellees moved successfully for summary judgment, and this appeal followed.

In reviewing a grant of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or a clear or manifest abuse of discretion. Nevertheless, the scope of review is plenary; the appellate court shall apply the same standard for summary judgment as the trial court . . .

The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party.

*Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159, 1165 (1997) (citations omitted).

¶ 4 Appellant's challenge rests on twelve assignments of error to the rulings included in the trial court's Omnibus Pre-trial Order. We will address these *seriatim,* although not necessarily in the order presented, and will combine those which present correlative claims.

¶ 5 We first note that strict liability is a theory of recovery under which a

---

* Retired Justice assigned to the Superior Court.

1. Appellee Stephenson Equipment Co. sold the scaffolding to decedent's employer.

plaintiff may recover damages for harm caused by a product rendered unreasonably dangerous by a defective condition. *Charlton v. Toyota Industrial Equipment,* 714 A.2d 1043, 1046 (Pa.Super.1998). Any recovery is predicated on the plaintiff's ability to demonstrate not only the defective state of the product, but also that the defect was a substantial cause of the injury. *Id.*

¶ 6 Appellant raises claims (Issues F, G, H, and I) that Appellees would have been permitted, improperly, to introduce evidence of negligence, assumption of the risk, recklessness and misuse of the product at trial, whereas she was precluded, erroneously, from pursuing a negligence theory (Issue J).

■■■ ¶ 7 Indeed, negligence concepts are inimical to strict liability claims and cannot be used to excuse a defective product or to reduce recovery by comparing fault. *Kimco Development Corp. v. Michael D's Carpet Outlets,* 536 Pa. 1, 637 A.2d 603, 606 (1993); *Madonna v. Harley Davidson, Inc.,* 708 A.2d 507, 508 (Pa.Super.1998). Appellant was barred from introducing the negligence concept because, although included as a claim in her complaint, it was noticeably absent from her timely Pretrial Memorandum, which stated clearly, "This Wrongful Death and Survival Act case is based on a products liability, design defect theory." (Plaintiff's Pretrial Memorandum Pursuant to Rule 212 filed March 12, 1999, at 1). No other theory of recovery is mentioned there or in any other document filed prior to September of 1999. Not until six months past the deadline set by the court for filing such memoranda did she assert the negligence theory, and then without having obtained leave of court to do so. Accordingly, the trial court properly struck the memorandum in response to Appellees' motion.

■■■ ¶ 8 As to the Appellees' anticipated presentation of assumption of risk, negligence/recklessness, etc. on the part of the decedent or a coworker, such evidence is permissible even in strict liability actions where it is germane to the issue of causation. *Madonna, supra* at 508–09; *Childers v. Power Line Equipment Rentals,* 452 Pa.Super. 94, 681 A.2d 201, 207 (1996), *appeal denied,* 547 Pa. 735, 690 A.2d 236 (1997). The question must be posed as to whether the defect in the scaffolding precipitated the contact between the scaffolding and the power line, causing the harm, or whether some supervening agency was proximately responsible. As this Court observed in *Bascelli v. Randy, Inc.,* 339 Pa.Super. 254, 488 A.2d 1110 (1985), albeit in different circumstances, "[t]he progress of the law in extending liability without fault to product suppliers [has not been] in disregard of fundamentals pertaining to the law of tort causation." *Id.* at 1113, (*quoting Oehler v. Davis,* 223 Pa.Super. 333, 298 A.2d 895 (1972)). Thus, "evidence of a plaintiff's voluntary assumption of the risk, misuse of a product, or highly reckless conduct is admissible insofar as it relates to the element of causation." *Charlton, supra* at 1047. "However, evidence of a plaintiff's ordinary negligence may not be admitted in a strict products liability action ... unless it is shown that the accident was **solely** the result of the user's conduct and not related in any [way] with the alleged defect in the product." *Id.* (emphasis added). Put another way, "a user's negligence is not relevant if the product defect contributed in any way to the harm." *Madonna, supra* at 509.

¶ 9 In this case, Appellees argue that because the lifting bar did not cause the scaffolding to touch the power line, the nexus between the scaffolding and the accident is absent, and no liability attaches. We find that this Court's recent decision in *Jara v. Rexworks,* 718 A.2d 788 (Pa.Super.1998), *appeal denied,* 558 Pa. 620, 737 A.2d 743 (1999), offers an instructive parallel. There the injury occurred when a construction site supervisor pushed the start button of a conveyor belt being cleaned by the plaintiff, who was thrown to the ground when the machine was activated. Suit proceeded on a strict liability

theory, asserting that the conveyor belt lacked certain safety features to protect workers performing maintenance and repairs. The jury found in favor of the plaintiff, concluding that the apparatus was defective when it left the appellant's hands; that the defect was substantially responsible for causing harm to the plaintiff; that the plaintiff did not assume the risk; and that there was a superseding cause of harm to the plaintiff in the conduct of the supervisor. The verdict was molded in favor of the manufacturer, but after argument on post trial motions the plaintiff was awarded a new trial on damages only, the trial court concluding that it had erred in charging the jury on superseding cause. The manufacturer of the conveyor belt appealed.

¶ 10 This Court reiterated that "[a] user's negligent conduct is not relevant if the product defect contributed in any way to the harm. However, where the defense offers evidence to show that the accident at issue was *solely* the result of plaintiff's conduct, and not a defective product, it is relevant and admissible for proving causation." *Id.* at 793 (emphasis in original). In discussing this finding we reasoned that

> evidence of Mr. Jara's conduct or the conduct of a third party was offered to prove the accident was the result of a superseding cause, namely someone started the belt moving. However, that action was irrelevant to the question of product defect. Had the product not been defective, Mr. Jara would have had warning or been provided a safe location once the belt was activated. Thus, it could not be established that the accident was solely the result of Mr. Jara's or another's conduct. Rather, as noted by the jury, the product defect was a substantial factor in contributing to Mr. Jara's injury.

*Id.* at 793–94.

¶ 11 With minor alterations in the factual references, this reasoning could easily be applied to the instant situation. In moving for the entry of summary judg-

ment, Appellees here contended that the expert reports submitted by Appellant failed to establish "a causal connection between the defects alleged and the accident at issue," (Appellees' Memorandum of Law in Support of Second Summary Judgment Motion at 2), on which basis they successfully moved for the preclusion of expert testimony on the subject of the defects in the scaffolding. Once the evidence was precluded, the jury would have no basis for concluding that the scaffolding was unsafe. Both this argument and the trial court's response miss the point of the court's pronouncement in *Jara,* which is that even where the accident is not specifically attributable to the product defect, the harm caused by that defect concomitant with the accident can result in liability of the manufacturer of the defective product to the injured person.

¶ 12 Appellees' brief advances the argument that the harm to Appellant's decedent is solely attributable to a supervening cause, as they contend that that only legally significant occurrence here was the contact between the scaffolding and the power lines caused by the decedent's inattention and/or that of the forklift operator. The necessary result of that contact is ignored. However, consistent with *Jara,* the path our decision must take is clearly marked: we find that the trial court erred in precluding the evidence of Appellant's experts on the matter of the defect in the design of the scaffolding, and to the extent that this decision compelled the entry of summary judgment in Appellees' favor, erred in that respect as well. (Issue A).

¶ 13 Insofar as Appellees' defenses of assumption of risk, misuse, and recklessness are concerned, *Jara* also speaks at least to the first of these. There are two prongs to an assumption of the risk analysis. The first concerns the plaintiff's awareness of the danger, and the second the voluntariness of his having placed himself in its path. The *Jara* Court found that

[w]here an employee, in doing a job, is required to use the equipment as furnished by the employer, this defense [assumption of the risk] is unavailable. An employee who is required to use certain equipment in the course of his employment and who uses that equipment as directed by the employer has no choice in encountering a risk inherent in that equipment.

*Jara, supra* at 795.

¶ 14 Thus the trial court erred in ruling that Appellees would be permitted to present evidence of this sort at trial.

■ ¶ 15 Evidence of negligence, misuse or recklessness requires similar assessment. In *Madonna, supra,* the appellant's decedent was killed in a motorcycle accident. The manufacturer of the motorcycle introduced evidence to prove that even if the defect on which suit was based, a bolt which, if broken would cause the driver to lose control of the machine, had been cured, the accident would have occurred anyway, as the decedent was driving with a blood alcohol level of .14 percent. Indeed, the appellees' expert testified that the bolt broke as a result of the accident, but did not cause it. The accident and the harm were directly and solely occasioned by the fault of the user, and thus his negligence was admissible. The distinction between *Madonna* and the instant case is clear.

■ ¶ 16 As to the matter of recklessness, this claim is addressed by our Court in *Childers, supra.* There the appellee's decedent was killed while operating a digger-derrick truck from behind when the truck jerked forward and rolled backward, crushing him. The action was instituted on the basis of strict liability, asserting defect in the design, manufacture and assembly of the vehicle. The appellants attempted to present evidence that the decedent's own conduct, either by misuse or recklessness, was the cause of the accident. We found that in order to prove misuse, the appellants were required to

show "that the use employed by the decedent was either unforeseeable or outrageous." *Id.* at 208. As in *Childers,* Appellees have offered nothing here which would show either.

■ ¶ 17 The recklessness posited by Appellees here as the distinguishing characteristic of the decedent's conduct is similarly unpersuasive. The *Childers* Court reiterated the test for such behavior as whether "the plaintiff would have been injured despite the curing of the defect, or [the behavior] is so extraordinary and unforeseeable as to constitute a superseding cause ." *Id. (quoting Dillinger v. Caterpillar, Inc.,* 959 F.2d 430, 441 (3rd Cir.1992)). All of these instances have relevance only if the defect were not the sole cause of the harm. That is not the case herein; had the defect been cured prior to the accident, the decedent would not have been electrocuted. The court thus erred in granting Appellees permission to present evidence of improper actions of the decedent and his coworkers at trial.

■ ¶ 18 Appellant next poses a series of questions (Issues C, D and E) challenging the trial court's refusal to admit evidence concerning the decedent's employers' purchase and use of clamping devices subsequent to the accident; concerning the availability of such clamping devices from Appellees' competitors; and the offer of such devices for sale by Appellees subsequent to the accident.

¶ 19 All of these claims relate to the subsequent repair rule, first enunciated in *Matsko v. Harley Davidson Motor Company,* 325 Pa.Super. 452, 473 A.2d 155 (1984), that prohibits admission of evidence relating to safety repairs of products involved in accidents. The rule, however, was determined to be "inapplicable to a products liability case." *Id.* at 156. In subsequent cases, *Connelly v. Roper Corp.,* 404 Pa.Super. 67, 590 A.2d 11, 13 (1991), and *Gottfried v. American Can Company,* 339 Pa.Super. 403, 489 A.2d 222, 226 (1985), which concerned design changes

rather than subsequent repairs, this Court ruled admissible evidence that relevant safety features were available when the product was sold, not design changes made after the sale date. In *Duchess v. Langston Corp.*, 709 A.2d 410 (Pa.Super.1998), *appeal granted in part*, 556 Pa. 435, 729 A.2d 69 (1999),[2] this Court found that the trial court had erred in precluding evidence showing that "appellee chose to produce an item which was not as safe as it could have been considering *the state of the art at the time of production.*" *Id.* at 414 (emphasis in original).

¶ 20 Appellant has sought to introduce all of these, remedial measures/repairs, design changes, and information concerning state of the art at the time the scaffolding was sold. As our Supreme Court has noted in *Spino v. John S. Tilley Ladder Company*, 548 Pa. 286, 696 A.2d 1169, 1172, (1997), Pennsylvania products liability law is that, "[s]pecifically, in a design defect case, the question is whether the product should have been designed more safely." *Id.* at 1172. In pursuit of this inquiry, an *en banc* panel of this Court has held that design changes are admissible as probative of the feasibility of an alternative design. *Mendralla v. Weaver Corp.*, 703 A.2d 480, 484 (Pa.Super.1997). *See also Phatak v. United Chair Company*, 756 A.2d 690, 692–93 (Pa.Super.2000). Under current law, this evidence is admissible, and again the trial court erred in prohibiting its presentation.

■ ¶ 21 Appellant also contends (Issue B) that the court erred in prohibiting her from presenting at trial evidence that instructions as to the manual stabilization necessary to transport the scaffolding had been given to the decedent's employer by Appellees. Appellees respond that such evidence merely represents another at-tempt to introduce negligence concepts into a strict liability action.

¶ 22 In fact, the evidence of the manufacturer's instruction is irrelevant to the issue of a design defect in the product, and could, if introduced, prove potentially confusing. Since even relevant evidence may be excluded where its probative value is outweighed by the danger of prejudice or confusion, the instruction was properly excluded. *Gregg v. Fisher*, 377 Pa. 445, 105 A.2d 105 (1954); Pa.R.E. 403. We find no error in the court's ruling on this point.

■ ¶ 23 In her last issues, (K and L) Appellant asserts that because the manufacturer disputed the feasibility of curing the defect in its product, she was erroneously prohibited from presenting testimony regarding the qualifications of those employees of Appellees who were responsible for the product at issue, and that she should have been able to show that Appellees had failed to test the product. We find this information germane to negligence, as Appellant herself concedes, not design defect, and concur with the trial court's decision to exclude it.

¶ 24 Judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.

---

2. The Supreme Court of Pennsylvania has granted permission for allowance of appeal in this matter on the issue of whether "the Superior Court err[ed] in reversing judgment in favor of Petitioner finding that evidence of a subsequent design change was admissible as a subsequent repair as opposed to a subsequent remedial measure[.]" *Duchess, supra,* 556 Pa. 435, 729 A.2d 69, 69–70 (1999).