

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2005

# D'Angelo v. ADS Machinery Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1911

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"D'Angelo v. ADS Machinery Corp" (2005). *2005 Decisions*. Paper 1377.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1377

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-1911

LEONARD D'ANGELO,
Appellant

v.

ADS MACHINERY CORPORATION,
an Ohio Corporation,
Defendant/Third-Party Plaintiffs,

v.

RELIANCE ELECTRIC COMPANY,
Third-Party Defendant.

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 00-CV-952
District Judge: The Honorable William L. Standish

Submitted Pursuant to LAR 34.1(a)
March 30, 2005

Before: ALITO, SMITH, and ROSENN, *Circuit Judges*

(Filed: April 12, 2005 )

OPINION OF THE COURT

1

SMITH, *Circuit Judge*.

Plaintiff Leonard D'Angelo appeals from the District Court's denial of his motion for a new trial following a jury verdict in favor of defendant ADS Machinery Corporation in connection with D'Angelo's product liability lawsuit. We will affirm the judgment of the District Court. Because we write only for the parties, we restrict our discussion to the facts and legal principles necessary for resolution of this appeal.

This diversity action arises from an injury suffered by D'Angelo during the course of his employment at a Pennsylvania galvanized steel processing plant operated by Galv-Tech, Inc., D'Angelo's employer. D'Angelo was injured when his hand was crushed in the snubber of a "No. 1 Bridle" machine utilized by Galv-Tech as part of a processing line that applies a galvanizing treatment to large sheets of metal. The No. 1 Bridle, designed and manufactured by ADS, is one of several machines integrated into the 600-yard long galvanizing line at the Galv-Tech facility where D'Angelo was injured.

At trial, D'Angelo presented a strict liability claim under Pennsylvania law pursuant to § 402A of the Restatement (Second) of Torts. D'Angelo's theory of defect was that the No. 1 Bridle lacked an appropriate "interlocking guard" in the form of a locked gate or fence that would have prevented access to the Bridle's rear opening until *after* an electronic "stop button" had been pressed and the snubbers and other rotating components inside the Bridle had completely ceased all movement. At the conclusion of

2

the trial, the jury returned a special verdict in favor of ADS, finding that the No. 1 Bridle was not defective when it left ADS's premises and control. D'Angelo's motion to set aside the verdict and for a new trial was denied, and D'Angelo appeals.

We review the District Court's evidentiary rulings for an abuse of discretion. *See Buskirk v. Apollo Metals*, 307 F.3d 160, 174 (3d Cir. 2002). We review the District Court's denial of D'Angelo's Rule 59 motion for abuse of discretion as well, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict. *See Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984).

D'Angelo raises a number of issues on appeal. Several issues relate to allegedly improper evidentiary rulings by the District Court. In addition, D'Angelo argues that the District Court erred in permitting ADS to invoke a "component parts" defense, which opened the door to evidence concerning the allocation of responsibility between ADS and Galv-Tech with respect to the installation of safety guards for the No. 1 Bridle. Several issues presented by D'Angelo as separate evidentiary questions are in fact subsumed in the issue of whether the District Court properly permitted ADS to raise this defense.

D'Angelo argues that the District Court improperly permitted ADS to introduce evidence of his alleged abnormal use of the No. 1 Bridle. Evidence of a plaintiff's abnormal use is permitted in certain circumstances under Pennsylvania law, in instances where the alleged misuse may reasonably be found to have been extraordinary, highly reckless, and not reasonably foreseeable to the manufacturer. *See Clark v. Bil-Jax, Inc.*,

3

763 A.2d 920, 923 (Pa. Super. 2000); *Jara v. Rexworks*, 718 A.2d 788, 793-94 (Pa. Super. 1998). D'Angelo's alleged abnormal use relates to his improper trimming of small sheet metal scraps in a manner that increased the likelihood of jamming the galvanizing line, as well as his decision to place his hand in the No. 1 Bridle's rear opening "pinch point" without checking a light on the control panel that remained lit until the snubber at the rear of the Bridle had ceased its movement. ADS introduced ample testimony from which a jury could conclude that these actions by D'Angelo constituted an abnormal use of the No. 1 Bridle. Whether such misuse was "extraordinary" or "highly reckless" in a manner not foreseeable to ADS is a closer call, but the question on appeal is whether any reasonable trier of fact could conclude that D'Angelo's misuse rose to this level. Taking the evidence, as we must, in the light most favorable to the jury's verdict, we find that a reasonable trier of fact could indeed conclude that D'Angelo's abnormal use, and in particular D'Angelo's placement of his hand in the Bridle's rear opening pinch point, was extraordinary, highly reckless, and not reasonably foreseeable to ADS. Thus, we do not believe the District Court abused its discretion with respect to this issue.

A second issue raised by D'Angelo concerns the District Court's decision to permit ADS to introduce evidence concerning D'Angelo's alleged assumption of the risk of injury based upon the manner in which he utilized the No. 1 Bridle. Pennsylvania courts have held that where an employee is required to use certain equipment in the course of his employment, and uses that equipment as directed by the employer, the

4

employee cannot be said "voluntarily" to have assumed the risk of encountering any dangers associated with the equipment. *See Clark*, 763 A.2d at 924-25; *Jara*, 718 A.2d at 794-95. D'Angelo argues that because he used the No. 1 Bridle during the course of his employment, the District Court should have barred ADS from introducing evidence concerning his alleged assumption of risk. ADS responds that the rule in these cases does not apply here, where ADS introduced sufficient evidence to give rise to a genuine dispute concerning whether D'Angelo was using the No. 1 Bridle "as directed by [his] employer," as opposed to misusing it in a manner contrary to the training and instructions he had received while working at Galv-Tech. The record contains sufficient evidence to support the distinction drawn by ADS, and thus we believe the District Court did not err by permitting the assumption of risk issue to go to the jury.

Moreover, even if we were to accept D'Angelo's position, we do not believe D'Angelo suffered any prejudice in connection with the assumption of risk issue. The District Court's instructions to the jury created a special verdict framework of four separate questions for the jury to address. The jury answered the first special verdict question by finding that ADS's No. 1 Binder was not defective. Thus, the jury did not reach the third question on the special verdict form, which concerned whether or not D'Angelo had assumed the risk of encountering any dangers associated with ADS's product. Given the jury's failure to reach the assumption of risk issue, we do not believe D'Angelo suffered any prejudice arising from the District Court's decision to permit the

5

introduction of evidence relating to D'Angelo's alleged assumption of the risk.

D'Angelo also argues that the District Court erred by allowing ADS to argue that its No. 1 Bridle was merely one component in relation to the overall galvanizing line, and that under § 402A, responsibility for installing the type of interlocking guard envisioned by D'Angelo's expert witness would therefore properly have fallen on Galv-Tech, rather than ADS. The District Court held that ADS was permitted to raise this defense based upon our decision in *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir. 1978). In *Verge*, we stated that "the requirement that liability only be imposed where the manufacturer is responsible for the defective condition is necessarily implicit in § 402A . . . ." 581 F.2d at 386 (quoting *Taylor v. Paul O. Abbe, Inc.*, 516 F.2d 145, 147 (3d Cir. 1975)). We elaborated on this general principle by prescribing a three-prong inquiry to be used in allocating responsibility for alleged design defects arising from the absence of a particular safety feature in cases where the finished product was the result of substantial work by more than one party and was manufactured or assembled in more than one stage. *See Verge*, 581 F.2d at 386-87. We indicated that in such cases, allocation of responsibility for the absence of a safety device should be determined by looking to (1) trade custom (at what stage is that device generally installed); (2) relative expertise (which party is best acquainted with the design problems and safety techniques in question); and (3) practicality (at what stage is installation of the safety device most feasible). *See id.* at 387.

Notwithstanding D'Angelo's arguments to the contrary, we believe ADS introduced evidence that provided a reasonable basis for the District Court's decision to permit ADS to argue the *Verge* defense. This evidence included testimony indicating that the No. 1 Bridle was a component of the broader galvanizing line, that the galvanizing line was comprised of approximately 60 integrated components, and that contractors other than ADS were hired by Galv-Tech to coordinate the installation and integration of various galvanizing line components. These contractors prepared foundation drawings for the foundation on which the machines that made up the galvanizing line were mounted. They also installed the foundation, determined the placement of foundation-mounted guards designed to guard various machines in the galvanizing line, installed the electronic control panel that controlled the No. 1 Bridle, and supervised installation of the wiring and piping used to integrate the various machines that together formed the entire galvanizing line. ADS also introduced testimony concerning the contract between itself and Galv-Tech, under which ADS had agreed to supply certain machine-mounted guards for rotating components of the No. 1 Bridle, but which left responsibility for installation of foundation-mounted guards in the hands of Galv-Tech and one of its installation contractors.

We believe that the foregoing evidence introduced by ADS provided an adequate foundation for the District Court to submit to the jury the question of whether responsibility for rectifying the alleged defect in ADS's No. 1 Bridle properly rested with

7

ADS or with some other party.[1]  With this understanding in place, resolution of the

remaining appeal issues raised by D'Angelo is relatively straightforward.  D'Angelo has

not disputed that the jury could rationally find that someone other than ADS was

responsible for the alleged defect based upon an application of the three factors identified

in *Verge*.[2]  Under *Verge's* "trade custom" prong, ADS permissibly introduced industry

standards evidence concerning industry practices in allocating responsibility for safety

features such as the interlocking guard described by D'Angelo's expert.  D'Angelo

challenges the admissibility of testimony in which ADS's expert witness referenced a

number of safety guards incorporated at various points on the No. 1 Binder and on other

ADS machines that were part of the galvanizing line.  D'Angelo argues that this

testimony was not relevant, and that it improperly introduced negligence concepts by

tending to show that ADS acted reasonably with respect to its overall approach to

providing guards for its machines.  ADS correctly responds that this testimony was

---

[1]D'Angelo argues that under *Brandimarti v. Caterpillar Tractor Co.*, 527 A.2d 134 (Pa. Super. 1987), the District Court should not have permitted ADS to raise the *Verge* defense, because the No. 1 Bridle contained a stamp indicating it was manufactured by ADS. *Brandimarti*, however, did not purport to address a situation in which there is a genuine factual dispute concerning whether a product has been manufactured and assembled in more than one stage.  Instead, *Brandimarti* involved an application of § 400 of the Restatement (Second) of Torts, in which the court found that the parent corporation Caterpillar Tractor was liable for defects in a forklift, where it had chosen to place its name on a forklift manufactured by a Caterpillar subsidiary.  *See id.* at 139-40.

[2]We also note that D'Angelo has not objected to the specific wording of the District Court's jury instructions with respect to the *Verge* defense.  Moreover, D'Angelo never sought a modified instruction based upon the fact that the alleged defect arguably would have required the involvement of multiple parties in rectifying the absence of the electronically-controlled interlocking guard envisioned by D'Angelo's expert.

utilized solely to highlight the distinction between foundation-mounted safety guards and machine-mounted safety guards, which distinction was in turn relevant to determining who was responsible for the absence of the foundation-mounted interlocking guard envisioned by D'Angelo's expert witness. Contrary to D'Angelo's assertions, ADS never argued that the presence of various machine-mounted guards on other components in the galvanizing line constituted evidence that ADS's No. 1 Bridle was not defective.

Finally, D'Angelo challenges ADS's introduction of evidence concerning the terms of the contract between itself and Galv-Tech. Under the *Verge* inquiry, however, this evidence provided support for the inference that industry practice, respective expertise, and practicability weighed in favor of Galv-Tech bearing responsibility for the absence of the interlocking guard envisioned by D'Angelo's expert. The District Court's instructions also cautioned the jury that the question of allocating responsibility between ADS and a third party could only be relevant if the jury first determined that the No. 1 Bridle was not in and of itself an integrated final product, but rather was a component of the broader galvanizing line. Thus, the introduction of the evidence relating to the contract between ADS and Galv-Tech did not run afoul of the general Pennsylvania rule that a manufacturer has a non-delegable duty to provide a safe product.

Accordingly, for the foregoing reasons, the judgment of the District Court will be affirmed