J-S01039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.G.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.G. | : | |
| | : | |
| Appellant | : | No. 1264 MDA 2020 |

Appeal from the Order Entered August 25, 2020
in the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-16-07639


BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED FEBRUARY 09, 2021**

Appellant, K.G. ("Mother"), files this appeal from the order entered by the Lancaster County Court of Common Pleas, awarding J.G.B. ("Father") primary physical custody of the parties' minor son, G.G. ("Child") and maintaining the parties' shared legal custody.  After careful review, we affirm.

Mother and Father are the biological parents of Child, who was born in March 2014.  While Father was not initially involved in Child's life, Father filed a Complaint for Custody on August 24, 2016.  On February 2, 2017, the trial court awarded the parties shared legal custody and Mother primary physical custody.  Subsequent to the filing of a petition to modify by Mother, September 6, 2017, the trial court awarded the parties shared physical custody on an alternating weekly basis and maintained shared legal custody.

_____

[*] Former Justice specially assigned to the Superior Court.

On  August 1, 2019, subsequent to Mother's petition to modify and by stipulation of the parties, the trial court modified the custody arrangement for shared physical custody, with Father to exercise physical custody one weekend per month based on the school calendar, with the option of a second weekend locally during the school year, and a large portion of the summer.

On February 10, 2020, Father filed a petition for modification sought primary physical custody of Child, claiming Mother's household was not safe due to the presence of Mother's boyfriend, S.P.[1]  On August 17, 2020, the trial court held a hearing at which Mother and Father were each represented by counsel and testified on their own behalf.  Father presented the testimony of Mother's former landlord, B.U.; Father's sister, S.B.; Mother's brother, R.G.; and Mother's grandmother, B.M.  Mother presented the testimony of Mother's boyfriend, S.P.; and Mother's friend, D.D.

On August 25, 2020, the trial court entered an order modifying the custody arrangement to award Father primary physical custody during the school year, but directing that the parties would maintain shared legal custody.   The trial court granted Mother physical custody one weekend per month as well as the option of an additional weekend locally during the school year.  Trial Court Opinion (T.C.O.), 8/25/20, at 6-8.

_____

[1] Thereafter, on May 1, 2020, Mother, who moved with Child from Christiana, Pennsylvania (Lancaster County) to Chester, Pennsylvania (Chester County), filed a notice of proposed relocation.  On May 5, 2020, Father responded with a counter-affidavit.  As Mother agreed the exchange location would remain in Lewistown, Pennsylvania, the parties stipulated that the disputed issue remained primary physical custody, not relocation.  *See* Order, 8/25/20, at 1.

During the summer, the trial court provided that the parties will share physical custody on a two-week on/two-week off basis commencing the Sunday after school ends with exchanges Sundays at 5:00 p.m. *Id.* at 8. As both parties admitted to having altercations at custodial exchanges in Lewistown, Pennsylvania, the trial court directed that only Mother, Father, and Child should exit the vehicles during the exchanges. *Id.* The trial court also set forth a holiday schedule. *Id.* at 8-9.

On September 23, 2020, Mother, through counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued a Rule 1925(a) Opinion on October 26, 2020 in which it referenced its prior opinion.

On appeal, Mother raises the following issue for our review:

> Whether the trial court abused its discretion by reversing a 6-year physical custody status quo based primarily on hearsay evidence and without sufficient evidence that the Child's best interests were served by such a reversal?

Mother's Brief at 9.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether

- 3 -

the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted).

This Court consistently has held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5323, 5328, 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody and provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[2]

In its Opinion accompanying its Order, the trial court thoroughly addressed the custody factors pursuant to Section 5328(a) as follows:

**1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party:** The Court finds that both Mother and Father are likely to permit frequent and continuing contact between the Child and the other party. Despite the contention that Mother withholds

---

[2] Further, we have stated that "[a]ll of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order. … The record must be clear on appeal that the trial court considered all the factors." ***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa.Super. 2014) (citation omitted). Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d).

the Child from Father, the Court finds that while Mother can be difficult, aside from Father's first Court-ordered weekend in September, Father was able to exercise his weekends with the Child. Despite the change in distance, Mother was committed to keeping the exchange location the same such that Father would not be required to drive farther to pick up the Child.

**2. The present and past abuse committed by a party or member of the party's household whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child:** The Court finds that both Mother and the Child are at a continued risk of abuse in Mother's current household setting. Mother and her boyfriend have a tumultuous relationship where screaming, fighting, and emotional abuse is a regular occurrence. Mother testified that none of the abusive incidences have occurred with the Child present and that all fighting occurs outside of the presence of the Child. The Court does not find Mother credible on that issue. Mother demonstrated by her actions that at various junctions in the past year that she does not believe herself or the Child to be safe while she shares a residence with her boyfriend. While they co-habitated at her residence in Christiana, Mother left her residence or moved out of her residence in fear for her safety. Mother had family resources willing to help her, but instead of relying on them, Mother moved with the Child without Father's consent from Christiana to Chester, PA to live in a home that is controlled by boyfriend and his family and further away from her familial resources. Since moving to Chester with her boyfriend, Mother again left the residence for fear for her safety and filed a PFA against her boyfriend. At the time of the custody hearing, Mother had resumed living with her boyfriend and attempted to paint a picture of a healthy home with a family that occasionally quarrels, but is otherwise wonderful and good for a [c]hild to grow up in. The Court again does not find Mother credible in this regard.

**3. The parental duties performed by each party on behalf of the child:** Both parties perform parental duties for the Child while he is in his or her household. Mother's boyfriend does the majority of the cooking for her household because by her admission he is the better cook. Neither party supported any contention that the Child is neglected in either party's household.

**4. The need for stability and continuity in the child's education, family life and community life:** The Court finds that the Child needs stability in his educational, familial, and community life and finds that Father is the party most likely to be able to provide this for the Child. Simply put, Mother is not stable at this time. Mother moved into a situation she admits has been abusive and the Court does not believe that the threat of abuse no longer exists. Mother is further away from family resources and has alienated many of her family resources due to her actions regarding the child and her boyfriend. Father presented as stable and surrounded by supportive family resources that will ensure continued stability for the Child.

**5. The availability of extended family:** Father has the majority of his extended family in the Blairsville, PA. Mother has family in Coatesville and Ephrata. Mother does not have relatives in Chester, but would likely rely on the family supports of her boyfriend's family.

**6. The child's sibling relationships:** The Child is an only child.

**7. The well-reasoned preference of the child, based on the child's maturity and judgment:** The Child did not present a well-reasoned preference due to his young age and maturity level. The Court is satisfied that, given the evidence presented, it has a clear picture of what is in the Child's best interests regarding primary custody during the school year.

**8. The attempts of a parent to turn the child against the other parent except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm:** The Court finds that neither party has attempted to turn the party against the other parent. Both Mother and Father are guilty of subjecting the Child to disorderly custody exchanges where "adult" participants scream, fight, and threaten each other in the presence of the young [c]hild. Credible testimony was presented about the Child's troubled demeanor after these tumultuous exchanges. The Court finds that such conduct is not in the best interests of the Child and must stop.

**9. Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs:** The Court finds that it is incredibly important for the emotional development of the

Child to not be surrounded by dysfunction. The Court does not doubt that Mother is loving and nurturing to the Child, but finds that her inconsistencies and instability is detrimental to the Child's emotional needs. No evidence was presented that the home Father provides is anything but stable and loving.

**10. Which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child:** The Child has no specific special needs though Mother has the Child in counseling to address issues related to custody. The Court finds that both parties presented as parents who are willing to attend to the Child's daily physical, developmental, and educational needs. The Court has concerns about emotional trauma that the Child is subjected to in Mother's household. Mother stated that she believes that the screaming, fighting, intimidation, and name calling that goes on in her household is normal and the Court submits to her that it is not normal, not healthy, and implores her to address these skewed views of relationships with her counselor.

The Court notes that Father was not involved in the Child's life until he was a toddler. While such an absence is regrettable, it does not diminish the fact that he has a good relationship with the Child and is the Child's most stable option at this time.

**11. The proximity of the residences of the parties:** Father lives in Blairsville, PA. The parties lived approximately 4 hours apart when Mother lived in Christiana. Now that Mother lives in Chester, the parties reside approximately 5 hours apart. The parties agree to still meet for exchanges at the Burger King in Lewistown, PA[,] which is an approximate two-hour drive for Father.

**12. Each party's availability to care for the child or ability to make appropriate childcare arrangements:** Both parties are available to care for the Child or make appropriate child-care; arrangements. Father utilizes family members for assistance with childcare and Mother utilizes after-school care programs, such as the YMCA, or her boyfriend to care for the Child.

**13. The level, of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is no evidence of unwillingness or inability to**

**cooperate with that party:** The level of conflict between the parties is moderate. The Court finds that Mother's boyfriend is the aggravating factor to the parties' lack of cooperation for the best interests of the Child. The Court finds that Mother's direct testimony was lacking in candor as to what she does to contribute to the dysfunction at custody exchanges. The Court finds that Mother lacks the necessary self-control to refrain from responding to "smart comments" during custody exchanges. Father's family members and their smart comments only serve to exacerbate the problem.

**14. The history of drug or alcohol abuse of a party or member of a party's household:** Neither party presented evidence that either party or a member of their household have a history of drug or alcohol abuse. Mother's boyfriend has some prior drug charges and currently has a medical marijuana card that was prescribed for his mental health conditions. There was little credible testimony to support that there are current issues of drug addiction in Mother's household.

**15. The mental and physical condition of a party or member of a party's household:** Neither party nor any member of their household have a physical condition that would hinder their ability to parent the Child. Mother's boyfriend is a disabled veteran diagnosed with and treated for PTSD. Mother's boyfriend takes medicine and receives counseling to manage his condition. Mother has been diagnosed with depression. Mother attends counseling and takes medication for her depression. Father has no diagnosed mental health conditions that affect his ability to parent the Child.

**16. Any other relevant factor:** The majority of the conflict in this case centers around Mother living in Chester with her boyfriend. Father does not approve of the Child residing in Chester due to his perception of it having higher crime and lower quality public schools. The Court will refrain from making findings regarding the quality of public schools because evidence to support that contention was not properly introduced. The Court recognizes that Mother's current residence in Chester is vastly different from Mother's prior residence in Christiana, but the Court does not count that as a negative. The rural/urban distinction testified to at the hearing was based on conjecture and biases and not concrete data upon which the Court can rely.

The issue in this case that the Court finds troubling is Mother's choice to subject herself and her son to a toxic home environment. Every witness with knowledge of Mother and her boyfriend testified to rampant dysfunction. Mother and boyfriend themselves admitted to their dysfunction though they used weaker terminology. Mother testified to having very heated arguments with her boyfriend which cause her to leave the house. Mother also acknowledged that she has sent messages to third parties where Mother states that she is fearful of her boyfriend for her and her Child's safety. Most troubling is that Mother indicated that she believes emotional abuse in a relationship is normal and that everyone does it. While the Court recognizes that Mother is free to live as she pleases, such decisions directly impact the best interests of the Child[,] which is paramount to the Court.

Mother's stability is a cause for concern. Over the past six months, Mother has bounced around from living in Christiana, Coatesville, and Chester, PA. Mother testified that she cannot afford to rent by herself, which was one of the main reasons she moved to Chester, PA with her boyfriend. Mother alleges that this is partially due to the pandemic and her losing her job. Mother worked for and was laid off from her position as support staff for a doctor's office. Mother now works as a receptionist for United Electrical. Mother has had ample opportunity to remediate the unstable housing situation with the aid of family, but she has instead elected to move into a situation where she appears to be more financially dependent on boyfriend. This decision is concerning to the Court given the nature of their relationship and its impact on Mother and the Child.

Opinion, 8/25/20, at 1-5.

Mother does not challenge any of the trial court's specific determinations as to the Section 5328(a) factors, but claims the trial court lacked compelling evidence to disturb the status quo in which Mother had primary physical custody of Child since his birth. Mother argues that the trial court failed to consider how maintaining the status quo would have been in Child's best interests to promote stability and continuity. Mother therefore contends that, as Child lived primarily with her and was doing well, the evidence presented

did not support a need to modify the custody arrangement to award primary physical custody to Father. Mother's Brief at 14-17.

As noted above, the trial court is required to consider all of the Section 5328(a) factors in entering a custody order. **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa.Super. 2011). Although the trial court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to Section 5328(a), the amount of weight a court gives any one factor is almost entirely discretionary. **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa.Super. 2013). Critically, as we stated in **M.J.M.**:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. **See A.D. v. M.A.B.**, 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

**Id.** (emphasis added).

While Mother cites to this Court's decision in **E.B. v. D.B.**, 209 A.3d 451, 466-67 (Pa.Super. 2019) to argue that a trial court cannot alter the status quo without compelling evidence, her reliance on this decision is misplaced. In **E.B.**, this Court found the trial court abused its discretion in modifying the parties' custody arrangement in an *interim* order on a temporary basis without providing the parties due process. This Court found specifically that:

> In some circumstances entering an order without notice on a *temporary* basis may be necessary to address a child's best interest. ... In this case, it was an abuse of the trial court's

- 12 -

discretion to alter the status quo without notice and an opportunity to be heard after full preparation, without any apparent emergency or change in circumstances, without any explanation as to why it was in Child's best interest, and without considering the effect of eliminating years of detailed prior orders in exchange for an order not specifically tailored to the parties' and Child's needs.

*Id.* at 465–66. As such, this Court provided that "trial courts should be wary of upending the status quo prematurely without substantial justification that the change was warranted by a child's best interest. . . the ultimate polestar is a child's best interest." *Id.* at 465–66.

Unlike in *E.B.*, we are not dealing with a temporary custody order; the trial court reached its decision to modify the parties' custody arrangement after a full evidentiary hearing at which both parties had notice and the opportunity to present evidence as to the Child's best interests.

Further, and more importantly, we find that the record supports the trial court's findings and analysis of the custody factors and determinations as to Child's best interests. In reaching its decision to modify the custody arrangement to award Father primary physical custody of Child, the trial court found a critical point of concern was Mother's lack of stability. The trial court emphasized that when Mother needed to move from her residence for financial reasons, she rejected the resources of her supportive family and chose to move farther away from her family into a home controlled by her boyfriend, with whom she admitted was emotionally abusive. Mother does not acknowledge that the trial court was troubled by her decision to subject herself

and Child to a toxic home environment in which her relationship with her boyfriend is characterized by Mother's own family as rampant dysfunction.

We interpret Mother's challenge at its core as a dispute to the trial court's findings of fact and determinations regarding credibility and weight of the evidence, as well as the weight attributed to certain factors. While not framed as such, Mother, in essence, questions the trial court's conclusions and assessments and seeks for this court to re-find facts, re-weigh evidence, and/or re-assess credibility to her view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443.

After a thorough review of the record, we find no abuse of discretion. As we determine that the trial court's findings and determinations are supported by competent evidence in the record, we will not disturb them.

In addition, Mother claims the trial court's decision to award Father primary physical custody was improperly based on hearsay statements from Father and Maternal Great-Grandmother. Mother argues that the trial court's decision must be overturned as she asserts that the trial court gave great weight to this hearsay evidence, which it allowed over Mother's objection.

Specifically, Mother highlights the testimony of Father that he "heard that [Mother's] boyfriend was abusing Child and Mother, and heard that [Mother's boyfriend] was smoking marijuana in front of [Child]." Mother's

Brief, at 18. Father further testified to receipt of a call from Mother's family in February 2020, when Child was with Father, advising Father to not return Child as Mother had shown up to her brother's home in the middle of the night and "was terrified of [her boyfriend] and how afraid -- she was terrified of the way [her boyfriend] treated [Child]." *Id.* at 19. Mother also references the testimony of Maternal Great-Grandmother that Child told her that Mother's boyfriend hit him with a belt. *Id.* at 21-22.

> With respect to issues of admissibility, this Court has held that:
>
> > . . . the decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. *Commonwealth v. Johnson*, 639 Pa. 196, 160 A.3d 127, 143 n.14 (2017), *cert. denied sub. nom*, *Johnson v. Pennsylvania*, ––– U.S. ––––, 138 S.Ct. 508, 199 L.Ed.2d 393 (2017). A reviewing court will not disturb these rulings absent an abuse of discretion. *Id.* Discretion is abused if, inter alia, the orphans' court overrides or misapplies the law. *Commonwealth v. Batts*, 640 Pa. 401, 163 A.3d 410, 434 n.9 (2017).

*In re A.J.R.-H.*, 647 Pa. 256, 273, 188 A.3d 1157, 1166–67 (2018).

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801. Hearsay is generally inadmissible unless it is subject to one of the hearsay exceptions set forth in the rules of evidence. Pa.R.E. 802. However, this Court has also recognized that ". . .where the statement is being offered to show its effect on a listener, it is not being offered for the truth of the matter and is non-hearsay." *Schmalz v. Manufacturers & Traders Tr. Co.*, 67 A.3d 800, 803 n.3 (Pa.Super. 2013) (citations omitted).

We agree with the trial court that the evidence raised by Mother to which she objected was non-hearsay as it was admitted, not for the truth of the matter asserted, but its effect on the listener. Father testified that he filed a petition seeking primary physical custody of Child because he had been informed that Mother's boyfriend was verbally and physically abusive to Child and that Mother's boyfriend used marijuana. N.T. at 9-11.

Father testified that on a particular occasion in February 2020, he did not return Child to Mother's custody because Mother's family members had warned him not to give Child back for Child's own safety. N.T. at 16-18. Father indicated that he took this course of action as Mother's brother and mother had told him that Mother had showed up to her brother's house in the middle of the night and had indicated that she was was "terrified" of her boyfriend and the way he treated Child. N.T. at 16-18. Maternal Great-Grandmother testified that she confronted Mother's boyfriend after Child had told her that Mother's boyfriend had hit him with a belt. N.T. at 137-140.

Nevertheless, even assuming such evidence was in fact hearsay, the testimony at issue was cumulative of other evidence admitted at trial. Mother admitted that she had heated arguments with her boyfriend, which her own counsel described as "world wars" in which Mother's boyfriend called Mother derogatory names, but Mother claimed that these arguments never occurred in front of Child. N.T. at 97-98. Mother admitted that her relationship with her boyfriend was emotionally abusive, but minimized the conflict as she felt that "we all do it … [and] all talk mean to each other." N.T. at 99.

In addition, Mother stipulated to the admission of a note that she wrote to her landlord indicating that she was giving thirty days notice that she was terminating the lease due to "an emergency situation with a boyfriend that was living" with her. N.T. at 96-97; Plaintiff's Exhibit 6. In that note, Mother states that "I can't believe that I have to leave my home but I have no choice for our safety" and asks the landlord not to tell anyone about her current whereabouts. Plaintiff's Exhibit 6.

In addition, Mother's brother, R.G., offered uncontested testimony that when Mother sought refuge at his home after fights with her boyfriend on several occasions. R.G. testified that each time Mother arrived at his home distraught and upset, she revealed that she did not feel safe at her boyfriend's home. N.T. at 110. R.G. indicated that he contacted Father to warn him as he did not feel it was safe for Child to be at Mother's boyfriend's home and described Mother's boyfriend as "toxic." N.T. at 112-14, 116-18. R.G. became frustrated and did not speak to Mother for a few months when Mother resumed her relationship with her boyfriend. N.T. at 112-15. Mother did not object to any of R.G.'s testimony. In light of the evidence presented, we cannot find that the admission of the contested statements affected the trial court's decision to award Father primary physical custody of Child.

As such, even if the challenged statements constituted hearsay, the trial court's decision to admit this testimony was not reversible error. *A.J.B. v. M.P.B.*, 945 A.2d 744, 751 (Pa.Super. 2008) ("[t]o constitute reversible error, an evidentiary ruling must be both erroneous and prejudicial to the

complaining party") (citation omitted). ***See also Childers v. Power Line Equip. Rentals, Inc.***, 681 A.2d 201, 206 (Pa.Super. 1996), *appeal denied,* 547 Pa. 735, 690 A.2d 236 (1997) ("[Evidentiary] ruling[s] must be shown not only to have been erroneous but harmful to the part[ies] complaining") (citations omitted) (some brackets in original).[3]

Accordingly, for the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/09/2021

---

[3] To the extent Mother challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. ***See M.J.M.***, 63 A.3d at 339.